857 F.2d 262
 129 L.R.R.M. (BNA) 2925, 48 Fair Empl.Prac.Cas. 147,
47 Empl. Prac. Dec. P 38,351, 57 USLW 2303,
110 Lab.Cas. P 10,847
 Bobby N. OWENS, Plaintiff-Appellee,
v.
TEXACO, INC., and The International Association of
Machinists and Aerospace Workers and The
International Association of Machinists
and Aerospace Workers, Local
1792, Defendants
Texaco, Inc., Defendant-Appellant.
 No. 86-2551.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 14, 1988.
Rehearing and Rehearing En Banc Denied Dec. 6, 1988.
 
 James D. Garrison, J. Mart Mitchell, Houston, Tex., Griffin B. Bell, Frank C. Jones, David F. Guldenschuh, Atlanta, Ga., for Texaco, Inc.
 Mark T. McDonald, Mark T. McDonald & Associates, Houston, Tex., for Owens.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before CLARK, Chief Judge, GARZA and POLITZ, Circuit Judges.
 CLARK, Chief Judge:
 
 
 1
 This appeal arises from the judgment of the district court that the seniority system which Texaco, Inc. applied to Bobby Owens violated Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. Sec. 1981. Because the district court's findings of fact are clearly erroneous, we reverse.
 
 Facts
 
 2
 Bobby N. Owens was laid off by Texaco, Inc. on April 4, 1983, pursuant to the terms of a collective bargaining agreement between Texaco and the International Association of Machinists, Local 1792 (IAM). At that time, Owens had the least seniority of any employee in his classification (carpenter), as calculated by the method prescribed in the master labor agreement. That agreement provided that seniority be calculated from the day the employee entered his classification. Owens argued that he was entitled to retroactive seniority for time he had spent in a craft training program, since such training program time had been counted for seniority in the past.
 
 
 3
 Owens' argument refers to previous occasions when retroactive seniority had been awarded pursuant to separate, negotiated agreements between Texaco and some of the unions representing workers at Texaco's Neches chemical plant. No such agreement had been made between Texaco and Owens' union, the IAM, which covered Owens' training class. Because no specific agreement for retroactive seniority existed for Owens, Texaco refused to give him credit for his time in the training program. As a result, R.L. Simon, who was hired as a journeyman carpenter after Owens entered the training program but before Owens completed it, had more seniority under the collective bargaining agreement. When Owens was laid off, Simon was retained. Owens is black; Simon is white.
 
 Background
 
 4
 Prior to 1980, three training classes were conducted at Texaco's Neches chemical plant. For each of these three classes, the IAM, which represented carpenters, machinists, and boilermakers, negotiated a separate contract with Texaco to give retroactive seniority dating back to entry in the program to trainees who completed the class. The Pipefitters Union had a similar separate training class contract for the labor classifications it represented. These contracts specifically altered the seniority system set out in the collective bargaining agreements. One union, the International Brotherhood of Electrical Workers, never had such a contract for its member-trainees.
 
 
 5
 When the 1980 training class, of which Owens was a member, started, the IAM again proposed an agreement for retroactive seniority. Texaco made a counterproposal which required that trainees complete the program within 30 months in order to receive retroactive seniority. The IAM would not agree, and no contract concerning retroactive seniority for trainees in this class was entered. After the layoffs were announced in 1983, union officials again proposed a seniority agreement for trainees from the 1980 class. On advice of counsel, Texaco refused to contract for a change in the seniority procedure at a time when layoffs were impending.
 
 
 6
 IAM filed a grievance on behalf of the trainees alleging that Texaco had violated the collective bargaining agreement by not granting them retroactive seniority. The dispute was submitted to arbitration. The arbitrator specifically determined that Owens had no contractual right to retroactive seniority. He also found no evidence of racial discrimination.
 
 
 7
 Owens then filed a charge with the Equal Employment Opportunity Commission. The Commission found no probable cause to believe that Owens had been subject to discrimination, and issued a right to sue letter. This action ensued.
 
 
 8
 Under the evidentiary guidelines distilled by the Supreme Court, a plaintiff can make out a prima facie case of a Title VII violation by establishing: 1) that he belongs to a racial minority; 2) that he was qualified for a particular position; 3) that he was not hired or retained despite his qualifications; and 4) that he was replaced by a nonminority. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 215 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973). The district court determined that Owens had proved a prima facie case of racial discrimination since the evidence showed: 1) that he was qualified for and entitled to retroactive seniority because he had completed the training program within 30 months; 2) that he was denied seniority despite his qualifications; and 3) that this was done so that a white employee would be retained. The court further found: 1) that Texaco had an "established past practice" of awarding retroactive seniority to participants in training programs; 2) that Texaco's conduct in refusing to follow that past practice was "obviously discriminatory;" and 3) that Texaco's reasons for this action were more likely than not based on discriminatory criteria. The district court made no mention of the arbitrator's interpretation of the collective bargaining agreement.
 
 
 9
 These findings of the district court are contrary to the evidence and clearly erroneous. The court also erred in completely disregarding the arbitral decision.
 
 Owens' Right to Retroactive Seniority
 
 10
 The district court's finding that Owens was entitled to retroactive seniority ignored the arbitrator's earlier interpretation of the collective bargaining agreement and subsequent negotiations between Texaco and the IAM. After a full hearing on the issue, the arbitrator concluded that:
 
 
 11
 Indeed, the evidence indicates that there was much negotiation between the company and the union on this matter and an agreement never was reached since both sides were not satisfied with the conditions. There would be no reason for those protracted negotiations if an agreement was in force or if past practice dictated the course of action to be taken. If I were to rule in the Union's favor, I would be granting to the Union something that the company specifically disagreed to in negotiations. This certainly would do violence to the collective bargaining process.
 
 
 12
 The district court erred in completely disregarding the arbitration award.
 
 
 13
 An employee may pursue fully both his right to arbitration under a collective bargaining agreement and his cause of action under Title VII, and the findings of the arbitrator with regard to discrimination issues are not binding on the court. Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). However, under the Steelworkers Trilogy,[1] the arbitral decision is final and binding to the extent it resolves questions of contractual rights. The employee may assert his independent statutory rights under Title VII, but the arbitrator's interpretation of the contract status of the parties is controlling. In this instance the arbitrator specifically addressed the question of Owens' right to retroactive seniority under the collective bargaining agreement and determined that he had none. He further found that the company and the union had been unable to agree on the terms of a modifying contract and that past practice did not control retroactive seniority. The district court was bound by the arbitrator's interpretation of the bargaining agreements and status of the parties. No new or different evidence was presented at trial to support Owens' right to retroactive seniority. The court was clearly erroneous in concluding that Owens was entitled to retroactive seniority.
 
 Past Pattern or Practice
 
 14
 The district court, in its Findings of Fact and Conclusions of Law, referred several times to Texaco's "past practice" of granting retroactive seniority to trainees. The court was correct in observing that three previous training classes were awarded seniority dating back to their entry in the program upon completion of their training. However, this was contrary to seniority provisions in the Master Labor Agreement and was based upon modifications agreed to in separately negotiated agreements between the individual unions and Texaco. Nothing in the record indicates that retroactive seniority was ever given to any trainee in the absence of a contract to that effect. The fact that specific negotiations culminating in a contract modification took place for each of the previous classes lends great weight to Texaco's contention that no past pattern of granting seniority without a contract ever existed. For example, we note the IBEW never negotiated such an agreement and trainees represented by that union were never given retroactive seniority.
 
 
 15
 At the time Owens' class began training, Texaco and IAM had been unable to reach agreement regarding credit for time in the training program. Therefore, the collective bargaining agreement controlled seniority, and its provisions did not include any provision for retroactive seniority. The district court found as a fact that the layoff was governed by those provisions. The evidence is clear that Texaco had no retroactive seniority policy outside the separate, negotiated contracts. The district court's finding that Owens was entitled to such seniority is clearly erroneous.Texaco's Reasons for Refusing Retroactive Seniority
 
 
 16
 The arbitrator's resolution of the contractual claim is not dispositive of Owens' statutory claims under Title VII. A critical fact in this case was whether Texaco's decision not to change the seniority agreement after the layoff was announced was based on discriminatory criteria. When the IAM approached Texaco in 1983 and offered to agree to Texaco's request to limit training course seniority to those completed in 30 months, Texaco consulted its house counsel, Sheil. Sheil advised Texaco that although the company had the right to agree to the proposal at that juncture, he recommended against it. In his opinion, changing the seniority list after a layoff had been announced would create a greater risk of ultimate liability than not changing it.
 
 
 17
 Sheil testified that when he gave that advice, he was unaware of the status of any particular employees who would be affected or of any such employees. Likewise, Girouard, the Texaco official who made the final decision with regard to the union proposal, and other Texaco representatives with whom he discussed the issue, testified that they made no investigation into which individuals would be affected nor did they look at the existing seniority list.
 
 
 18
 Texaco management relied on Sheil's advice in rejecting the union's proposal for retroactive seniority. The district court, however, discounted this advice as the reason for Texaco's action. Obviously the court disagreed with it.
 
 
 19
 Owens contends that he had actually completed the training program within 30 months, and that this complied with Texaco's original proposal to modify the seniority provisions of the underlying collective bargaining agreement. Therefore, he contends, Texaco should have given him retroactive seniority, and that they did not do so in order to keep Simon, the white employee, on the job. This completely ignores the fact that seniority rules were in place under the collective bargaining agreement and that no separate contract to change those rules had been made. Whether an employee finished a training course in 30 months was irrelevant under the seniority system provided in the governing collective bargaining agreement. Sheil's advice was sound, but even if it had not been so, there is no evidence in the record that Texaco's reliance on it was unreasonable or merely a pretext to cover a racial motive.
 
 
 20
 The arbitrator found no evidence of racial discrimination in Owens' case. Under Gardner-Denver, a court may accord the arbitral decision on discrimination issues such weight as it considers appropriate under the facts and circumstances of the case before it. Gardner-Denver, 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21, 39 L.Ed.2d at 165 n. 21. Although the arbitrator's decision was not controlling, it can properly be considered in this case. His findings reinforce the conclusion that Sheils' advice was based on a correct perception of the company's position regarding existing seniority rights. The district court was not warranted in wholly ignoring the arbitral decision that no racial discrimination existed. The district court's conclusion that Texaco's reasons for refusing to agree to retroactive seniority were not legitimate is clearly erroneous.
 
 
 21
 The district court's conclusion that Texaco's actions were "obviously discriminatory" is not supported by the evidence. The actions to which the court refers is the refusal to follow its past pattern and practice of awarding trainees retroactive seniority. The undisputed evidence that the past practices of Texaco and the unions in negotiating and making collateral agreements regarding retroactive seniority varied from class-to-class and union-to-union makes it clear there was no set pattern with regard to making such seniority modifications.
 
 Conclusion
 
 22
 The judgment of the district court is reversed and the case is remanded with directions to enter judgment for Texaco.
 
 
 23
 REVERSED and REMANDED.
 
 
 
 [1]
 United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)