# REVISED

United States Court of Appeals,

Fifth Circuit.

No. 95-40945.

James L. GRAEF, Plaintiff-Appellee,

v.

CHEMICAL LEAMAN CORPORATION, Chemical Leaman Tank Lines, Inc., Dennis Copeland, and John Gallagher, Defendants-Appellants.

Feb. 24, 1997.

Appeal from the United States District Court for the Eastern District of Texas.

Before GARWOOD, DAVIS and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants, Chemical Leaman Corporation ("CLC"), Chemical Leaman Tank Lines ("CLTL"), Dennis Copeland, and John Gallagher, appeal from a judgment entered on a jury verdict for retaliatory discharge in violation of Tex.Lab.Code Ann. § 451.001 (Vernon Supp.1996). Because the district court abused its discretion in refusing to admit evidence of the arbitration award, we vacate the district court judgment and remand this case for a new trial.

I.

CLTL, a wholly owned subsidiary of CLC, transports chemicals interstate. Graef was employed by CLTL as an interstate truck driver working out of the company's Freeport, Texas terminal. Drivers like Graef are required to have a valid Department of Transportation ("DOT") medical examiner's certificate showing they are physically fit to drive. *See* 49 C.F.R. § 391.41(a) (1996). Relatedly, Article 5:4-B of the Collective Bargaining Agreement ("CBA") between CLTL and the local teamsters union provides that absence from the job for more than three years due to illness or injury results in a loss of seniority.

On December 21, 1990, Graef injured his right shoulder and forearm when the steering on his

truck locked up. Graef received workers' compensation benefits for this injury through April 1994; in April of 1994 he settled his Texas workers' compensation claim for a lump sum of $52,500. Graef remained out of work for nearly three years, during which time he was treated by his personal physician, Dr. Larry Smith. Dr. Smith released Graef to return to work on November 29, 1993. Graef then visited the CLTL terminal in Freeport and met with terminal manager John Gallagher about returning to work. At this meeting Gallagher informed Graef that his DOT medical certificate had expired and that he must take a new physical before he could return to work as a driver.

On December 21, 1993, Graef called Gallagher and reminded him that it was the third anniversary of his accident and therefore, under the CBA, the last day he could take the DOT physical without losing his seniority. Gallagher informed Graef that, although they had received his accident injury file from Dr. Smith, CLTL required *all* of his medical records before he could take the physical. The records were faxed to CLTL and Graef was contacted on December 27, 1993 and asked to take a physical at the Freeport clinic.

Graef's physical was administered on December 27. The parties dispute the objective course and result of that physical, but it is undisputed that on December 28, 1993, Graef was informed that he had failed his physical and that he had been removed from the seniority rolls in accordance with the terms of the CBA. Graef's removal from the seniority rolls was tantamount to his discharge as a driver.

Graef filed this suit in state court alleging retaliatory discharge due to the filing onn. § 451.001,[1] along with other claims that were dismissed and are not relevant to this appeal. After removal to federal court, the district court ruled, ancillary to denying a remand motion, that the mere fact that appellants might invoke the CBA to justify their action did not convert the claim into one preempted by the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Graef v. Chemical Leaman Tank Lines,* 860 F.Supp. 1170, 1173-74 (E.D.Tex.1994). The district court also rejected

---

[1]Section 451.001 essentially precludes an employer from discharging or in any other manner discriminating against an employee because the employee has in good faith filed a workers' compensation claim.

2

the appellants' contention that Graef's claim was preempted by the Federal Motor Carrier Safety Act ("FMCSA"), 49 USC §§31101-31162 (1994) and pertinent DOT regulations.

Graef's case was tried before a jury. Graef argued that appellants devised and carried out a plan to get rid of him because he had made a workers' compensation claim against CLTL. According to Graef, after he was released to return to work by his physician in November 1993, appellants engaged in a number of delaying tactics to allow the three-year anniversary of his absence from work to pass so that Graef would lose his seniority. Graef testified and argued that CLTL's physician performed a perfunctory examination that was preordained to determine that Graef could not pass the DOT physical and therefore was unable to work.

CLTL argued that it took away Graef's seniority because the CBA required it to do so. Appellants denied that they were influenced in this respect by Graef's workers' compensation claim or that they manipulated the medical examination or its timing to make Graef lose his seniority. Appellants further argued that Graef was removed from the seniority rolls only after he failed the December 27 physical exam, rather than on the three-year anniversary of his absence from work. If Graef had passed the exam, they contend, Graef would have been returned to work as a driver at CLTL.

The jury returned a verdict in Graef's favor and awarded Graef $200,501 in compensatory damages plus an additional $200,501 in punitive damages. The district court entered a final judgment consistent with that verdict and appellants lodged this appeal. We consider below the issues appellants raise in this appeal.

II.

A.

First, appellants argue that Graef's state law damages claims are preempted by federal transportation law. Specifically, they contend that Graef's claims directly conflict with the FMCSA,

3

and DOT regulations.[2]

Under the FMCSA, Congress directed the DOT to "prescribe minimum safety standards for commercial motor vehicles," and ensure that "the physical condition of operators of commercial motor vehicles is adequate to enable them to operate such vehicles safely." 49 U.S.C. § 31136(a), (a)(3). Congress also expressed its intent in the FMCSA to preempt state law which interferes with these federal requirements. *Id.* §§ 31140, 31141. Moreover, the DOT regulations enacted pursuant to the FMCSA set forth detailed standards for driver physical qualifications, including the qualifications and medical examinations necessary to obtain the mandatory DOT driving certificate. *See* 49 C.F.R. §§ 391.1-391.125 (1996).

Appellants argue that on the facts of this case, § 451.001 conflicts with the federal statutory and regulatory scheme. As we explained in *City of Morgan City v. South Louisiana Elec. Cooperative Assoc.,* 31 F.3d 319 (5th Cir.1994), *cert. denied* --- U.S. ----, 116 S.Ct. 275, 133 L.Ed.2d 196 (1995), there are two ways in which conflict preemption may occur:

> First, a provision of state law may be incompatible with a federal statute such that compliance with both is a "physical impossibility." Second, even if compliance with both is not impossible, state law is nonetheless preempted if its application would disturb, interfere with, or seriously compromise the purposes of the federal statutory scheme. In other words, an application of state law that would frustrate the purpose of a federal statutory scheme is preempted.

31 F.3d at 322 (citing *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1721-22, 75 L.Ed.2d 752 (1983)).

Neither form of conflict preemption is present here. The essence of Graef's retaliatory discharge claim is that, regardless of other reasons appellants may have had for discharging him, the filing of his workers' compensation claim was causally connected to his discharge. To prevail, Graef was required to prove that the filing of his workers' compensation claim was "a determinative factor" in appellants' decision to remove him from the seniority rolls. *See Parham v. Carrier Corp.,* 9 F.3d

---

[2]Although appellants claimed LMRA preemption below, their opening brief failed to raise the issue, and we consider it waived. *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.,* 729 F.2d 1530, 1540 n. 14 (5th Cir.1984) (quoting *Martin v. Atlantic Coast Line Railroad,* 289 F.2d 414, 417 n. 4 (5th Cir.1961)).

383, 386 (5th Cir.1993); *Pope v. MCI Telecommunications Corp.,* 937 F.2d 258, 265 (5th Cir.1991), *cert. denied,* 504 U.S. 916, 112 S.Ct. 1956, 118 L.Ed.2d 558 (1992); *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1090 (5th Cir.1991). Thus, instead of requiring Chemical Leaman to put disabled drivers behind the wheel, Graef's suit seeks to enforce a law prohibiting employers such as Chemical Leaman from discharging or discriminating against a worker because he filed a workers' compensation claim. If, as appellants claim, the sole reason Graef was removed from the seniority rolls was because he failed his physical examination and could not qualify for the mandatory DOT certificate, Graef's suit would fail. *See Texas Dept. of Human Services v. Hinds,* 904 S.W.2d 629, 636 (Tex.1995) (explaining that standard of causation in retaliatory discharge claims is that "the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did"). If, however, Graef can demonstrate that the filing of his workers' compensation claim was a determinative factor in his discharge, as the jury apparently concluded below, then liability can be imposed under § 451.001 without conflicting or interfering with the FMCSA or DOT regulations. The district court correctly rejected appellant's preemption argument.

B.

Appellants argue next that the district court erred in excluding evidence of Graef's arbitration award. Graef filed a labor grievance in early December 1993, pursuant to the procedures outlined in the CBA, protesting his removal from the seniority roster and the events leading up to that removal. The arbitration was held on February 2, 1995. Graef and appellants Copeland and Gallagher testified under oath and were subjected to cross-examination. On June 14, 1995, the arbitrator issued his award denying Graef's grievance and holding that Chemical Leaman "acted within its contractual rights when [Graef] was removed from the Seniority Roster at its Freeport, Texas Terminal."

Over appellants repeated objections, the district court refused to admit any evidence of the arbitration award and the grievance proceedings. The court also rejected appellants' proposed jury instruction relating to the award.

The district court, of course, is vested with broad discretion in determining the admissibility of evidence, and its rulings on such evidentiary matters are reviewed for abuse of that discretion. *Dixon v. Int'l Harvester Co.,* 754 F.2d 573 (5th Cir.1985). Arbitral awards are not immune from this general grant of discretion to the district courts. As the Supreme Court explained in *Alexander v. Gardner-Denver Co.:*

> "We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective bargaining agreement that conform substantially with [the statute], the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's [statutory] rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record...."

415 U.S. 36, 60 n. 21, 94 S.Ct. 1011, 1025 n. 21, 39 L.Ed.2d 147 (1974); *see also Wilmington v. J.I. Case Co.,* 793 F.2d 909, 919 (8th Cir.1986) (explaining admissibility of arbitral award in subsequent wrongful discharge suit reviewed for abuse of discretion); *Perry v. Larson,* 794 F.2d 279, 284 (7th Cir.1986) (same).

Appellants cite this Court's opinion in *Owens v. Texaco, Inc.,* 857 F.2d 262, 264-66 (5th Cir.1988), *cert. denied,* 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 423 (1989), for the proposition that arbitral awards are per se admissible in subsequent employment actions. We do not read *Owens* so broadly. In *Owens,* the plaintiff sought recovery under Title VII for a discriminatory layoff from work. The court was required to determine preliminarily whether Owens was entitled to retroactive seniority under the CBA. The arbitrator found that the CBA granted Owens no right to retroactive seniority, and the district court reached the opposite conclusion. *Id.* at 264. The district court also ignored the specific finding of the arbitrator that Owens produced no evidence of discrimination. This court reversed the judgment in favor of Owens. We held that the district court's findings relating to Owens' rights under the CBA were clearly erroneous and that the court erred in excluding the arbitral award in making those determinations. We also held that, although the arbitrator's decision regarding discrimination was not controlling, the district court was not warranted in wholly ignoring it. *Id.* at

6

266.

Owens stands in part for the proposition that, whether binding on the district court or not, an arbitrator's findings relating to an interpretation of the CBA or an application of the CBA to the facts should ordinarily be considered by the court. Moreover, Owens makes clear that even on issues relating to the existence of discriminatory or retaliatory animus, the award can be highly probative, and wholly ignoring it can constitute an abuse of discretion. Id.

As stated above, the Supreme Court has explained several factors that can assist the courts in resolving such evidentiary questions. These include (1) the degree of procedural fairness in the arbitral forum, (2) the adequacy of the record, and (3) the competence of the arbitrator. Gardner-Denver, 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21.

In the present case, the district court excluded all evidence of the arbitration on the grounds that the arbitration was irrelevant and immaterial and lacked any probative value, that appellants were not relying on the arbitration as an essential element or defense, and that any probative value would be outweighed by its prejudicial impact. The court also explained that it excluded the evidence because it did not have the record of the arbitration and, therefore, could not determine whether the arbitrator considered hearsay.

Our review of the record persuades us that the award was clearly relevant and highly probative of appellant's defense that it removed Graef from the seniority roster pursuant to the neutral and binding requirements of the DOT's driver qualification standards and the CBA's seniority policy. As Fed.R.Evid. 401 explains, " "[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The arbitrator's finding that Chemical Leaman's removal of Graef from the seniority roster was fully justified by the CBA, while not dispositive, is plainly relevant to Graef's retaliatory discharge claim; the award makes Chemical Leaman's non-retaliatory reason for the discharge more believable and, therefore, Graef's allegations of retaliation less probable.

7

Graef argues that the award is immaterial because, under this Circuit's case law, "[e]ven if other reasons for discharge exist, the plaintiff may still recover damages if retaliation is also a reason." *Jones,* 931 F.2d at 1090. Thus, the existence of alternative reasons for the discharge, "even reasons which the CBA justified," does not preclude liability under § 451.001. *Id.*

Our observation in *Jones,* however, does not justify excluding all evidence of the award in thige cases makes the relevance of the award in the present case undeniable. As the Texas Supreme Court recently made clear:

> [T]he standard of causation in whistleblower and similar cases should be that *the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did.* We think this best protects employees from unlawful retaliation without punishing employers for legitimately sanctioning misconduct or harboring bad motives never acted upon.

*Texas Dept. of Human Services v. Hinds,* 904 S.W.2d 629, 636 (Tex.1995) (emphasis added). Thus, to prevail Graef was required to show that but for his workers' compensation claim appellants would not have removed him from the seniority roster when they did. Appellants, on the other hand, sought to refute this contention by establishing that the CBA required Graef's removal from the seniority roster and that his workers' compensation claim played no role in that action. The arbitration award was central to this defense.

Nor does the lack of a complete record justify exclusion of the award in this instance. Neither side tendered the complete record of the arbitration proceeding to the district court. Appellants proffered the eighteen-page arbitration award, which, on its face, describes the nature of the proceedings, the contentions of the parties, the important items of evidence they relied on, and the conclusions and analysis of the arbitrator. For example, the award makes clear that Graef, Copeland, and Gallagher all testified under oath and that both parties had the opportunity to cross-examine.

While the absence of the entire record is a legitimate consideration in determining the admissibility of an arbitral award, it is not conclusive in this case. The Federal Rules of Evidence start from the premise that such records are generally admissible "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(6), (8)(C). And, the burden

of establishing the untrustworthiness of such documents is on the opponent of the evidence. *See, e.g., Cortes v. Maxus Exploration Co.,* 977 F.2d 195, 201 (5th Cir.1992); *Moss v. Ole South Real Estate, Inc.,* 933 F.2d 1300, 1305 (5th Cir.1991); *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 288 (3d Cir.1983); *Keith v. Volpe,* 858 F.2d 467, 481 (9th Cir.1988), *cert. denied,* 493 U.S. 813, 110 S.Ct. 61, 107 L.Ed.2d 28 (1989).

he burden of establishing that the arbitrator's findings were not trustworthy. Neither in the district court nor in this court does Graef point to any procedural or substantive defects that would render the arbitral award untrustworthy. Graef points to no unreliable hearsay evidence the arbitrator found important to his decision. In any event, the possible use of hearsay evidence in the abstract is insufficient to render the award inadmissible. *See, e.g., Moss,* 933 F.2d at 1309-10 (explaining that "many government reports, as with many expert witnesses, have to rely in part on hearsay evidence, and the reports are not generally excluded for this reason"); *see also Kehm v. Procter & Gamble Manufacturing Co.,* 724 F.2d 613, 618-19 (8th Cir.1983).

Nor was the district court warranted in excluding the evidence of the award under Rule 403 on the grounds that it was unduly prejudicial. Evidence is not prejudicial merely because admitting it may sway the jury against a party. As we explained in *Smith v. Universal Services, Inc.,* " "[p]rejudicial' cannot be equated with "harmful' in all cases; rather, it connotes "harmful' plus "non-probative.' " 454 F.2d 154, 157 (5th Cir.1972). For the reasons described above, evidence of the award is highly probative of appellants' defense that Graef was removed from the seniority roster because of the neutral obligations of the CBA and the DOT's driver qualification standards, rather than because he filed a workers' compensation claim. For these reasons, we conclude that the district court abused its discretion in excluding evidence of the award.

III.

We have considered appellants' remaining arguments and find merit in only one. Because this issue may be presented on retrial, we consider it here.

In presenting his punitive damage evidence, Graef offered a CLTL annual report. After

considerable discussion, the district court admitted the report after it had been redacted to show only one figure: $13,323,385, the total annual salary CLTL paid to all of its officers. Generally, evidence of a defendant's worth or income is admissible in determining the proper level of punitive damages. *See, e.g.,* RESTATEMENT (SECOND) OF TORTS § 908 cmt. e (1977) (noting relevance of defendant's ability to pay punitive damages); *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 29-30 (Tex.1994) (listing cases). Here, however, the single figure representing total officer salaries provided no such information, and admitting it constitutes an abuse of discretion.

## IV.

The remainder of appellants' contentions are without merit.[3] We conclude, however, that the district court abused its discretion in excluding all evidence of Graef's arbitration award. The award is highly probative of appellant's defense and, properly limited, does not present problems of undue prejudice.

The judgment of the district court is VACATED and the case is REMANDED for a new trial consistent with this opinion.

---

[3]One of appellants' contentions, that the district court erroneously instructed the jury that Graef need only prove that the filing of his workers' compensation claim was a "contributing factor" in his removal from the seniority roster, warrants some attention. Although we conclude that the court's instructions adequately explained the legal standard and that any deficiencies do not rise to the level of reversible error, we note that the Texas Supreme Court recently clarified the standard of causation for retaliatory discharge claims in *Hinds* by making clear that an employer can rebut evidence of a causal nexus between the discharge and the protected activity by showing that it would have taken the same adverse employment action regardless of the protected activity. *Hinds,* 904 S.W.2d at 636. Because *Hinds* clarifies Texas law on this point, the district court will want to consider it in formulating his instructions on retrial.