Mercedes **ANDRADE GARCIA,** Maria Teresa Galvan De Garcia, the Estate of Juan Antonio Garcia, Blanca Garcia Rojas Gregoriedes, Teresa Elizabeth Garcia Rojas, Maria Guadalupe Garcia Valdes, Yolanda Valdes Esquivel, as Next Friend of Juan Antonio Garcia Valdes, a Minor, Plaintiffs,

v.

**COLUMBIA MEDICAL CENTER OF SHERMAN, and Bradley G. Christianson, D.O., Defendants.**

No. 3:97–CV–18.

United States District Court, E.D. Texas, Paris Division.

March 12, 1998.

Donald H. Flanary, Jr., Jenna B. Yake, Michael V. Winchester, Vial Hamilton Koch & Knox, Dallas, TX, for Mercedes Andrade Garcia, Maria Teresa Galvan De Garcia.

L. Glen Kratochvil, Ernest M. Powell, III, Kratochvil & Powell, Houston, TX, for Blanca Garcia Rojas Gregoriedes, Teresa Elizabeth Garcia Rojas.

Randy Lynn Fairless, Johanson & Fairless, Houston, TX, for Maria Guadalupe Garcia Valdes, Yolanda Valdes Esquivel, as next friend of Juan Antonio Garcia Valdes, a minor, Estate of Juan Antonio Galvan Garcia.

Cynthia Shea Goosen, Cooper Aldous & Scully, Sherman, TX, David Wayne Moorman, Moak & Moak, Huntsville, TX, for Bradley G. Christianson, DO.

Lea F. Courington, Kenneth Charles Stone, Max Edward Freeman, II, Benton Jordan Barton, Gwinn & Roby, Dallas, TX, Elizabeth D. Alvarado, Candice Eileen Sayre, Shannon Martin Finkelstein & Sayre, Houston, TX, for Medical Plaza Hosp., Inc., d/b/a Columbia Medical Plaza Hosp.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE EXPERT TESTIMONY

SCHELL, Chief Judge.

This matter is before the court on Defendant Columbia Medical Center of Sherman's ("Columbia") Motion to Strike Plaintiffs' Experts ("Motion to Strike"), filed on February 4, 1998.[1] Plaintiffs filed responses on January 28 and January 30, 1998.[2] Columbia filed a reply on January 30, 1998. Upon consideration of the motion, responses, reply, and applicable law, the court is of the opinion

---

1. Columbia actually filed its Motion to Strike on January 16, 1998. However, the motion was not file stamped until February 4, 1998, because the court did not grant Columbia leave to file its motion until February 3, 1998.

2. The individual groups of plaintiffs in this case filed two separate responses. The court will refer to these responses collectively as "Plaintiffs' Response."

that Columbia's motion should be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

A discussion of the factual background of this case can be found in a previous order and will be recited here only as necessary for clarification or as needed for the disposition of the present motion. *See* Order of February 2, 1998, Granting in Part and Denying in Part Plaintiffs' Motion for Leave to File Amended Complaint at 1–2. In its Motion to Strike, Columbia moves to strike all or part of the expert testimony of the following witnesses: Josue Martinez Carrera ("Carrera"), Daniel J. Slottje ("Slottje"), Teresa Elizabeth Garcia Rojas ("Rojas"), Eileen K. Geraci ("Geraci"), Luz Del Carmen Hernandez Diaz ("Diaz"), Eva Kassatoki ("Kassatoki"), and Mark Siegler, M.D. ("Siegler"). Columbia argues that these witnesses' expert testimony is inadmissible under one or more of the following: Federal Rules of Evidence 702 (hereinafter "Rule 702") and 403 (hereinafter "Rule 403"), TEX. REV. CIV. STAT. art. 4590i, § 14.01 (Vernon 1998) (hereinafter "Article 4590i"), and EASTERN DIST. OF TEX. LOCAL R. CV–26 (hereinafter "Local Rule 26"). The court will address Columbia's objections as to each witness in turn.[3]

## II. THE ADMISSIBILITY OF EXPERT TESTIMONY

■ Because many of Columbia's objections are based on Rule 702 as interpreted by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the court must first address the applicable standards of analysis used in evaluating the admissibility of expert testimony under Rule 702. Trial courts must act as gatekeepers in determining the admissibility of expert testimony. The question of whether expert

testimony will be allowed is a preliminary one which must be resolved according to the guidelines of Rule 104(a) of the Federal Rules of Evidence. FED. R. EVID. 104(a); *Daubert*, 509 U.S. at 592 n. 10. Federal district courts have a "wide latitude in determining the admissibility of expert testimony ...." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir.1997). The "decision to admit expert testimony will not be disturbed absent an abuse of discretion." *Carroll v. Morgan*, 17 F.3d 787, 789 (5th Cir.1994).

Rule 702 allows a qualified expert to testify if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. The Supreme Court has interpreted Rule 702 as requiring expert testimony to be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The relevancy requirement ensures that the expert testimony will actually "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* The reliability requirement ensures that the expert testimony is "supported by appropriate validation" and "establishes a standard of evidentiary reliability." *Id.* at 590.

■ To determine whether expert testimony is admissible under Rule 702 and *Daubert*, a trial court must decide pursuant to Rule 104(a) "whether the expert is proposing to testify to (1) scientific, [technical or other specialized] knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592. This determination requires the court to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593. To assist courts in this determination, the Supreme Court has suggested that trial courts examine a nonexclusive list of

---

**3.** As a threshold matter, Plaintiffs argue that Columbia's motion is not properly before the court because Columbia has not made a good faith effort to resolve its objections regarding the adequacy of Plaintiffs' expert disclosures pursuant to Rule 37(a)(2) of the Federal Rules of Civil Procedure. Pls.' Response at 3. While the court certainly agrees that parties must comply with Rule 37(a)(2)'s certificate of conference requirements before resorting to court intervention in ordinary discovery disputes, the court also notes that the docket control order in this case expressly states that the parties may object to expert testimony by filing a motion to strike or limit expert testimony. Docket Control Order of August 22, 1997, at 1–2. Therefore, the court finds that Columbia's Motion to Strike is properly before the court.

factors including whether a theory or technique has or can be tested, published, subjected to peer review, has or can be subjected to standards controlling its operation, the known or potential rate of error, and whether the theory or technique is generally accepted. *Id.* at 593–94. The Court also instructed trial courts to "be mindful of other applicable rules," such as Rules 703, 706, and 403, when determining the admissibility of expert testimony. *Id.* at 595.

While the Supreme Court limited its holding in *Daubert* to the specific scientific evidence at issue in that case, *id.* at 590 n .8, the Court's reasoning is applicable to any case involving expert testimony in this circuit. Indeed, in *Watkins,* the Fifth Circuit held:

> whether an expert's testimony is based on scientific, technical or other specialized knowledge, *Daubert* and Rule 702 demand that the district court evaluate the methods, analysis, and principles relied upon in reaching the opinion. The court should ensure that the opinion comports with applicable professional standards outside the courtroom and that it "will have a reliable basis in the knowledge and experience of [the] discipline."

*Watkins,* 121 F.3d at 991 (applying *Daubert* to an engineering expert) (internal quotations omitted). *Daubert* should therefore be applied when assessing the admissibility of testimony by experts such as economists. *Id; see also Marcel v. Placid Oil Co.,* 11 F.3d 563, 567 (5th Cir.1994) (applying *Daubert* to an economist); *Daubert,* 509 U.S. at 592 n. 11 ("[W]e do not read the requirements of Rule 702 to apply specially or exclusively to unconventional evidence.").

### III. THE CONTESTED EXPERT WITNESSES IN THIS CASE

#### A. *Carrera*

##### 1. Rule 702

Columbia first objects to the admissibility of Carrera's expert testimony under Rule 702 and *Daubert.* Plaintiffs assert that Columbia's objection is misplaced because they do not intend to qualify Carrera as an expert. Instead, any testimony elicited from Carrera will be offered as lay opinion testimony pursuant to Rule 701 of the Federal Rules of Evidence. Thus, Plaintiffs continue, Rule 702 and *Daubert* are inapplicable to Carrera's testimony.

The court agrees with Plaintiffs' argument that Rule 702 and *Daubert* are inapplicable to lay opinion testimony. Plaintiffs have represented to the court that they will not attempt to qualify Carrera as an expert at trial, but only as a lay person qualified to give his opinions regarding Juan Antonio Garcia's ("Garcia") lifestyle and wealth. Therefore, Columbia's motion to strike Carrera as an expert witness pursuant to Rule 702 and *Daubert* is moot and is DENIED on that basis. However, if Plaintiffs attempt to qualify Carrera as an expert at trial, the court will entertain any properly raised objections to his qualifications as an expert at that time.

##### 2. Rule 403

Columbia next objects to Carrera's testimony pursuant to Rule 403. Columbia contends that any opinions which Carrera might offer as to Garcia's net worth would be based upon Carrera's personal relationship with Garcia. Carrera's opinions would not be based upon scientific reasoning or methodology; therefore, the probative value of such testimony would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Plaintiffs counter that Carrera's testimony is not inadmissible under Rule 403 because, while his testimony may be prejudicial to Columbia, it will not be unfairly prejudicial.

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. "Although relevant evidence is inherently prejudicial, the exclusion of such evidence under Rule 403 is allowed only when it is *unfair* prejudice ...." *United States v. Williams,* 132 F.3d

1055, 1059 (5th Cir.1998) (emphasis in original). Further, "[e]vidence is not prejudicial merely because admitting it may sway the jury against a party [and p]rejudicial cannot be equated with harmful in all cases; rather, it connotes 'harmful' plus 'non-probative.'" *Graef v. Chemical Leaman Corp.,* 106 F.3d 112, 118 (5th Cir.1997).

In the present case, Columbia has not demonstrated that the probative value of Carrera's testimony regarding Garcia's personal wealth or net worth is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The only basis for Columbia's objection is Columbia's claim that Carrera's testimony is not based upon scientific reasoning or methodology. But, as discussed above, Plaintiffs do not intend to qualify Carrera as an expert. Thus, the fact that Carrera's lay opinion as to Garcia's personal wealth may be based upon his observations of Garcia's lifestyle, and not upon scientific reasoning or methodology, in no way serves to suggest that the jury might base its decision on some improper basis. Consequently, Columbia's motion to strike Carrera's testimony pursuant to Rule 403 is DENIED.

### 3. Local Rule 26

Columbia's final objection to Carrera's testimony is based upon Local Rule 26. Specifically, Columbia argues that Plaintiffs failed to meet Local Rule 26's expert witness requirements as to Carrera. However, as stated above, Plaintiffs do not intend to call Carrera as an expert witness. Therefore, Columbia's motion to strike Carrera as an expert witness pursuant to Local Rule 26 is DENIED. However, if Plaintiffs attempt to qualify Carrera as an expert at trial, the court will entertain any properly raised objections to Plaintiffs' expert witness disclosure pursuant to Local Rule 26 at that time.

### B. Slottje

#### 1. Rule 702

■ Columbia next argues that Slottje, Plaintiffs' expert economist, should not be allowed to testify as an expert pursuant to Rule 702 and *Daubert.* Columbia claims that Slottje has based his opinions solely on Carrera's testimony. Thus, Columbia contends that Slottje's opinions are not supported by scientific reasoning, methodology, or reliable data. Plaintiffs counter that Rule 702 does not require Slottje's testimony to be based on scientific reasoning or methodology. Rather, Rule 702 only requires that his testimony be soundly grounded in the methodology and principles of his field. Further, Plaintiffs argue that even if Carrera's testimony is inadmissible, Slottje's opinions are still admissible because an expert witness may base his opinions on inadmissible evidence pursuant to Rule 703 of the Federal Rules of Evidence.

■ As previously discussed, the principles of *Daubert* are applicable to the testimony of expert economists such as Slottje. Merely because *Daubert* reasoning is applicable to the admissibility of Slottje's testimony, however, does not mean that his testimony must survive scrutiny under each of the factors listed in that case. The approach "envisioned by Rule 702 is ... a flexible one." *Daubert,* 509 U.S. at 594 & n. 12. The function of a trial court under *Daubert* is to ensure that the expert's testimony is both relevant and based upon a reliable foundation by determining whether the principles and methods used by the expert have a sound and reliable basis in the knowledge and experience of the discipline at issue—here, economics. *Watkins,* 121 F.3d at 990–91 & n. 7 (citing *United States v. 14.38 Acres of Land* 80 F.3d 1074, 1078 (5th Cir.1996)). Courts must be mindful, however, not to transgress too far into the province of the jury because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

Slottje's expert report states his opinions regarding the past and future lost earnings and services suffered as a result of Garcia's death. Slottje based his opinions on the following: Bank of Mexico's growth and discount rate tables for wages and interest, life expectancy tables for Mexico, United States worklife expectancy tables, and Carrera's re-

port. *Id.*, Ex. C at 5–11. Because no data is available for the worklife expectancy of a worker in Mexico, Slottje substituted the United States worklife expectancy tables for the unavailable Mexican data. *Id.*

In the present case, Columbia does not challenge Slottje's qualifications as an expert. Slottje's education and credentials clearly show that he is a qualified expert in the field of economics. Mot. to Strike, Ex. C (Slottje's expert report). Columbia argues instead that Slottje's opinions are not supported by scientific reasoning and methodology or reliable data.

Specifically, Columbia complains that Slottje's substitution of the United States worklife expectancy tables for the unavailable Mexican data should not be allowed because there is no way to determine whether the United States tables accurately reflect worklife expectancy in Mexico. Contrary to Columbia's argument, however, the proper analysis under Rule 702 and *Daubert* is not whether *some* of the data *might* be questioned, but whether Slottje's testimony is relevant and reliable, and whether the methods and principles upon which he has relied in forming his opinion have a sound basis in the field of economics.

Here, the methods and principles utilized by Slottje in reaching his opinions certainly have a sound basis in the field of economics. It is a commonly accepted practice in the field of economics to calculate future lost earnings based upon a worker's worklife probability and then adjust these figures for growth and inflation. The question of whether Slottje's opinions are accurate in light of his use of the United States figures for worklife expectancy is a question that goes to the weight, not the admissibility, of this evidence. In fact, Columbia's own expert, Ygnacio D. Garza ("Garza"), used the same methodology as Slottje in reaching his opinions regarding Garcia's past and future lost earnings. *Id.*, Ex. B at 2. Although Garza stated that he believed his calculations would have been more accurate if based upon data for worklife expectancy in Mexico, he too substituted the data for worklife expectancy in the United States for the unavailable Mexican data. *Id.* Therefore, the court finds that methodology

and principles used by Slottje in reaching his opinions have a sound basis in the field of economics.

 Columbia also complains that Slottje's opinions as to Garcia's net worth and income are inadmissible because they are based upon unreliable data. Slottje based his opinions regarding Garcia's net worth and income at least in part upon the information contained in Carrera's report. Columbia contends that this information is unreliable because (1) Carrera's opinions are inadmissible and (2) the Mexican tax returns relied upon by Garza more accurately reflect Garcia's net worth and income.

As previously discussed, Columbia's argument that Carrera's testimony is inadmissible as expert testimony is inapplicable because Plaintiffs have represented to the court that they do not intend to qualify Carrera as an expert witness. Even if Carrera's report is deemed inadmissible at trial, Rule 703 of the Federal Rules of Evidence permits an expert to base his opinions on inadmissible evidence if that evidence is of a type reasonably relied upon by experts in the field. Evidence regarding a person's wealth, assets, and spending habits is certainly the type of evidence reasonably relied upon by expert economists. If Columbia believes the data relied upon by Garza is more accurate than that relied upon by Slottje, that is a matter best left for direct and cross-examination. Accordingly, Columbia's motion to strike Slottje's expert testimony pursuant to Rule 702 and *Daubert* is DENIED.

2. Rule 403

Columbia also objects to Slottje's substitution of United States worklife expectancy figures for the unavailable Mexican data pursuant to Rule 403. Columbia argues that Slottje's use of this data could result in unfair prejudice, confusion of the issues, and misleading the jury. Columbia has failed to demonstrate in any way that the probative value of Slottje's opinions is substantially outweighed by the danger of undue prejudice, confusion of the issues, and misleading the jury. The weight to be given to Slottje's opinions is a matter to be decided by the

jury, not this court. Accordingly, Columbia's motion to strike Slottje's testimony pursuant to Rule 403 is DENIED.

### 3. Local Rule 26

██ Columbia next argues that Slottje's expert report fails to comply with Local Rule 26(d)(1). Columbia claims that Slottje failed to express any basis, reasons, or qualifications that would allow him to base his opinions regarding Garcia's past and future lost earnings and services on the United States worklife expectancy figures substituted for the unavailable Mexican data. Therefore, Columbia continues, Slottje's expert opinions should be excluded because they do not comply with the requirements of Local Rule 26(d)(1).

Local Rule 26(d)(1) requires disclosure of a "complete statement of all opinions to be expressed and the basis and reasons therefor, the data or other information considered in forming such opinions [and] the qualifications of the witness." EASTERN DIST. OF TEX. LOCAL R. 26(d)(1). Slottje's expert report clearly complies with the requirements of Local Rule 26. Slottje's report includes a curriculum vitae stating his qualifications. Mot. to Strike, Ex. C. Slottje's report also states that he based his calculations on Mexican life expectancy tables, United States worklife expectancy tables, and tables provided by Bank of Mexico for making growth and discount rate adjustments. *Id.* at 4. Slottje's report also states that the reason for his use of the United States worklife expectancy figures as a substitute for Mexican worklife expectancy figures was due to the lack of any comparable data for worklife expectancy in Mexico. *Id.* Thus, Slottje's report adequately states the basis and reasons for his opinions, the data relied upon, and his qualifications. Accordingly, Columbia's motion to strike Slottje's testimony pursuant to Local Rule 26(d)(1) is DENIED.

### C. Rojas

#### 1. Article 4590i

██ Columbia contends that TEX. REV. CIV. STAT. art. 4590i, § 14.01 (Vernon 1998) bars Rojas from offering expert testimony on the issue of whether Defendants departed from the accepted standards of medical care. Columbia argues that Rojas is not qualified as an expert under section 14.01 because she has never actually engaged in the practice of medicine. Plaintiffs reply that Rojas is qualified to offer expert testimony pursuant to section 14.01 because she received a medical degree upon her graduation from medical school at the Universidad La Salle in Mexico City, Mexico.

Section 14.01 states in pertinent part:

(a) in a suit involving a health care liability claim against a physician for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who: (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose . . . .

TEX. REV. CIV. STAT. art. 4590i, § 14.01(a)(1) (Vernon 1998). The term "practicing medicine . . . includes, but is not limited to, training residents or students at an accredited school of medicine or osteopathy or serving as a consulting physician to other physicians who provide direct patient care, upon the request of such other physicians." *Id.* § 14.01(b). If the qualifications of a potential expert witness do not meet the above criteria, the court may nevertheless allow the witness to offer expert testimony if it "determines that there is good reason to admit the expert's testimony." *Id.* § 14.01(d).

Plaintiffs concede that Rojas has not completed a medical residency, is not a licensed doctor, and has never engaged in the formal practice of medicine. Plaintiffs contend that Rojas is nevertheless qualified to offer expert testimony under section 14.01(b) because she was enrolled in medical school at the time of her father's alleged injuries. In support of this argument, Plaintiffs claim that section 14.01(b) "defines 'practicing medicine' to include students at an accredited school of medicine or osteopathy." Pls.' Response at 8. Plaintiffs' argument is not persuasive.

Contrary to Plaintiffs' reasoning, section 14.01(b) does not simply list the classes of persons who are deemed to be "practicing

medicine" (for example, "training residents," "students," and "consulting physicians"). Rather, section 14.01(b) defines which *acts* qualify as the practice of medicine. According to this definition, a person is practicing medicine when engaged in the acts of *"training* residents or students at an accredited school of medicine or osteopathy or *serving* as a consulting physician to other physicians ...." TEX. REV. CIV. STAT. art. 4590i, § 14.01(b) (Vernon 1998) (emphasis added).

■ Further, section 14.01(a) states that the witness must be a physician. *Id.* § 14.01(a). A physician is "a person licensed to practice medicine in this state." *Id.* § 1.03(a)(8). Thus, the proper interpretation of the statute is that a witness is qualified to offer expert testimony against a physician if the witness is a physician who trains residents or medical students, or who serves as a consulting physician to other physicians. This interpretation does not include medical students.

To hold otherwise could lead to ridiculous results. For example, under Plaintiffs' interpretation of the statute, a student in his first week of medical school, either at the time of his testimony or at the time a claim arose, would be allowed to testify as an expert on the issue of whether a physician departed from accepted standards of medical care. On the other hand, a licensed physician, not engaged in the formal practice of medicine either at the time of his testimony or at the time the claim arose, would not be allowed to testify on the same subject matter. Such a result would be absurd. Accordingly, the court is of the opinion that the term "practicing medicine" does not include medical school students.[4]

Rojas has never engaged in the practice of medicine as that term is defined under section 14.01(b). The mere fact that she was enrolled in medical school at the time of Garcia's alleged injuries does not change this

fact. Further, the court does not find that there is good reason to allow Rojas to offer expert testimony despite the fact that she is not a physician engaged in the practice of medicine. Accordingly, Columbia's motion to strike the expert testimony of Teresa Elizabeth Garcia Rojas pursuant to section 14.01 is GRANTED.

**2. Rule 702, Rule 403, and Local Rule 26**

Because the court has determined that Rojas' expert testimony should be excluded pursuant to section 14.01 of Article 4590i, the court need not address Columbia's objections to Rojas' expert testimony under Rule 702, Rule 403, and Local Rule 26.

**D. *Geraci***

**1. Article 4590i**

Columbia argues that Geraci, a registered nurse, is not qualified to offer expert testimony under section 14.01 because she is not engaged in the practice of medicine. Plaintiffs contend that although Geraci is not practicing medicine, she is a practicing registered nurse. Therefore, Geraci should be allowed to offer expert testimony regarding the alleged departure from accepted standards of care by Columbia and its staff.

As previously discussed, section 14.01 applies when a physician offers expert testimony against another physician. Section 14.01 permits a witness to offer expert testimony against a physician if the witness (1) is a physician (2) practicing medicine at the time the claim at issue arose or at the time the testimony is given. TEX. REV. CIV. STAT. art. 4590i, § 14.01(a) (Vernon 1998). Therefore, section 14.01 applies only where both the witness and the person against whom the expert testimony is offered are physicians.

In the present case, Geraci is not a physician. Consequently, section 14.01 precludes

---

4. Assuming for the sake of argument that Plaintiffs are correct in their claim that the term "practicing medicine" refers to students in an accredited medical school, Rojas still would not be qualified to offer expert testimony under section 14.01(b). According to Plaintiffs' argument, a student is considered to be practicing medicine if he is a student at an "accredited school of medicine." Rojas attended medical school at the Universidad La Salle in Mexico City, Mexico. The Universidad La Salle is not accredited by the American Medical Association. Therefore, Rojas was not a student at an accredited school of medicine, as that term was used by the Texas Legislature.

Geraci from offering expert testimony against a person who is a physician as that term is defined under Article 4590i. At the same time, however, section 14.01 does nothing to preclude Geraci from offering expert testimony against persons who are not physicians. Accordingly, Columbia's motion to strike or limit Geraci's expert testimony under section 14.01 is GRANTED IN PART, insofar as it relates to any expert testimony by Geraci against a physician, and DENIED IN PART, insofar as it relates to any expert testimony by Geraci against a person who is not a physician.

### 2. Rule 403

**[16]** Columbia also objects to Geraci's testimony under Rule 403. Columbia claims that the probative value of Geraci's testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Columbia's only argument in support of its objection, however, is that Geraci's testimony has little probative value because she lacks minimum qualifications. Columbia's bare assertion that Geraci lacks minimum qualifications, without more, is not sufficient to meet its burden under Rule 403.[5] Accordingly, Columbia's motion to strike Geraci's testimony pursuant to Rule 403 is DENIED.

### E. Diaz and Kassatoki

Columbia next argues that Diaz and Kassatoki should not be allowed to offer expert testimony because their expert reports do not comply with the requirements of Local Rule 26. On February 5, 1998, the court signed an order requiring each party "to submit for each witness whom the party expects to actually call to testify at trial, a brief statement regarding . . . [t]he nature of the witness's testimony[, t]he necessity for the witness's testimony[, a]nd [t]he expected duration of direct and cross examination of the witness." Order of February 5, 1998, at 1–2. In their responses to this order, Plaintiffs did not include either Diaz or Kassatoki on their lists of witnesses whom Plaintiffs actually expect to call to testify at trial. Because Plaintiffs have represented to the court that they do not expect to call either witness to testify at trial, Columbia's motion to strike the expert testimony of Diaz and Kassatoki pursuant to Local Rule 26 is MOOT and is DENIED on that basis. However, if Plaintiffs call either Diaz or Kassatoki to offer expert testimony at trial, the court will entertain any properly raised objections to these witnesses' expert reports pursuant to Local Rule 26 at that time.

### F. Siegler

Columbia next moves to strike the expert testimony of Siegler. Plaintiffs have identified Siegler as an expert witness who will testify regarding clinical and ethical responsibilities of doctors, nurses, and hospitals and their employees. Columbia objects to Siegler's testimony on two grounds. First, Columbia argues that any testimony by Siegler regarding Defendants' ethical responsibilities is inadmissible under Rule 403 because the probative value of such testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Second, Columbia argues that any testimony by Siegler regarding the proximate cause of damages to Plaintiffs' is inadmissible under Rule 702 and *Daubert* because such testimony is not supported by scientific reasoning or methodology.

### 1. Rule 403

■■■ Columbia's objection to Siegler's testimony regarding the ethical duties which a health care provider or hospital owes a patient is based upon the premise that such testimony could cause the jury to misinterpret the appropriate medical standard of care. In other words, Columbia claims that such testimony could cause the jury to find Defendants liable for breaching certain ethical duties when the real issue before the jury is whether Defendants departed from accepted standards of medical care. While Columbia's concerns are well founded, they are not

---

**5.** Indeed, Geraci's curriculum vitae alone shows that she has more than mere "minimal qualifications." Def.'s Mot., Ex. F (stating that Geraci received a bachelor of science degree in nursing from the University of Texas in 1978, was licensed by the State of Texas as a registered nurse in 1979, and has served as a nurse consultant to numerous parties).

sufficient to satisfy its burden under Rule 403.

Plaintiffs intend to offer Siegler's testimony, at least in part, for the purpose of informing the jury regarding the appropriate ethical duties which should be followed by a health care provider. While it is true that there is no cause of action for the breach of an ethical standard of care, testimony regarding ethical duties may be useful in informing the jury about the accepted standards of medical care which a reasonable health care provider would follow and in helping the jury to determine whether Defendants deviated from those standards. Therefore, Siegler's testimony is relevant to Plaintiffs' negligence and gross negligence claims.

The court is not persuaded by Columbia's argument that the probative value of such testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. The jury will not be asked to determine whether Defendants breached any ethical standards of care. Instead, the jury will be asked to determine whether Defendants breached the accepted standards of medical care. The court is confident that the jury will be able to differentiate between these two concepts and to use Siegler's testimony regarding the ethical standards of care only to the extent that such testimony is helpful in determining what the accepted standards of medical care are and whether Defendants departed from these standards. The court is also confident that properly worded instructions on the issues of negligence and gross negligence will eliminate the possibility that the jury might decide this case on an improper basis. Accordingly, Columbia's motion to strike Siegler's expert testimony regarding ethical standards of care pursuant to Rule 403 is DENIED.

2. Rule 702 and *Daubert*

Finally, Columbia objects to any expert testimony by Siegler regarding the proximate cause of Plaintiffs' alleged injuries and damages. Columbia argues that such testimony is inadmissible because Siegler's opinions are not based upon factors which were tested or scientifically validated. The court does not agree.

Siegler's expert report indicates that his opinions are based upon a variety of sources. Mot. to Strike, Ex. I. Among these sources are the depositions of Robert Olivares, Jr., the surgeon who performed Garcia's prostate surgery, Christianson, several of the plaintiffs, and at least four nurses who were present at the time of Garcia's alleged injury. *Id.* Siegler's expert report also indicates that his opinions are based on his experiences in practicing medicine for over twenty-five years. *Id.*

The fact that Sielger's opinions are not based upon independent "tests" or some type of "scientific" study does not render them inadmissible under Rule 702 or *Daubert.* Siegler's opinions are based upon his own experience as a doctor and upon the sworn testimony of several of the plaintiffs, as well as the doctors and nurses who were present at the time of Garcia's alleged injuries. Therefore, Siegler's opinions are based upon a sound and reliable foundation and may assist the jury in determining whether Defendants caused Plaintiffs' alleged injuries. Such is all that Rule 702 requires in this instance. Accordingly, Columbia's motion to strike Siegler's expert testimony pursuant to Rule 702 and *Daubert* is DENIED.

IV. CONCLUSION

Columbia's motion to strike or limit the expert testimony of Carrera, Slottje, Diaz, Kassatoki, and Siegler is DENIED. Columbia's motion to strike the expert testimony of Rojas is GRANTED. Columbia's motion to strike the expert testimony of Geraci is GRANTED IN PART, insofar as it relates to any expert testimony by Geraci against any physician, and DENIED IN PART, insofar as it relates to expert testimony by Geraci against a person who is not a physician, as the term physician is defined pursuant to TEX. REV. CIV. STAT. art. 4590i, § 1.03(a)(8) (Vernon 1998). It is so ORDERED.