[No. 55140-0-I. Division One. February 6, 2006.]

*In the Matter of the Detention of* Deryle D. Hovinga, *Appellant.*

*Oliver R. Davis* and *Elaine L. Winters* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *David J.W. Hackett, Deputy*, for respondent.

¶1 BAKER, J. — Deryle Hovinga appeals his commitment as a sexually violent predator, arguing that the State was required to plead and prove to the jury that he committed a recent overt act. He also argues that the superior court erred by precluding the defense expert from testifying about an e-mail that the defense received midtrial. Because Hovinga was incarcerated for a recent overt act at the time the State filed the commitment petition, the State was not required to plead and prove a recent overt act to the jury. Additionally, the court did not abuse its discretion by excluding proffered evidence because it had very little probative value and it had the potential to cause undue delay in the trial proceedings. We affirm.

I

¶2 In August 1981, Hovinga entered an *Alford*[1] plea to statutory rape in the first degree of a nine-year-old girl, committed while he was examining her as a treating chiropractor. He was sentenced to a maximum term of 20 years in prison, which was suspended on the condition that he complete the sexual psychopath program at Western

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

State Hospital. After spending five years in the program, Hovinga was sent to prison for not complying with the program rules. After he refused to return to inpatient treatment, his sentence was modified to impose the full 20-year prison sentence.

¶3 In August 1988, Hovinga was released into the community on parole. In April 1992, his parole was revoked due to sexually deviant behavior.[2] Hovinga spent the next 11 years in prison. Shortly before his scheduled release, the State petitioned to commit Hovinga as a sexually violent predator under chapter 71.09 RCW.

¶4 Hovinga moved to vacate the arrest warrant and dismiss the State's petition. He argued that the petition failed to allege that he committed a recent overt act during the time that he was released on parole. The court rejected Hovinga's argument, concluding that the State did not need to show a recent overt act because Hovinga was confined for a sexually violent crime or, alternatively, because his parole violation constituted such a recent overt act.

¶5 A couple of days before the State rested its case, Hovinga's attorney sent the State a copy of an e-mail written by Dr. Cheryl Milloy, a researcher who had conducted a study on recidivism rates of offenders who committed sexually violent crimes. The State moved in limine to exclude the e-mail from evidence and preclude Hovinga's expert witness, Dr. Richard Wollert, from testifying about the e-mail under ER 703. The court granted the State's motion, stating that "it's too late to inject something new into the case the day before the prosecution rests." During Dr. Wollert's testimony, Hovinga moved for reconsideration, but the court adhered to its earlier ruling.

¶6 A jury concluded that Hovinga is a sexually violent predator. Hovinga appeals the court's commitment order.

---

[2] After being caught on tape by a security camera, Hovinga admitted that he followed young girls around a Bon Marche store while fondling himself.

## II

¶7 Hovinga argues that the trial court erred in denying his motion to dismiss the State's petition because the State was required to plead and prove that he committed an overt act while released on parole. He maintains that a jury must find that he committed a recent overt act beyond a reasonable doubt. He also claims that the trial court abused its discretion by not allowing the defense expert to testify about Dr. Milloy's e-mail.

### A. Recent Overt Act

■ ¶8 Whether chapter 71.09 RCW or due process requires the State to plead and prove a recent overt act in order to commit an individual as a sexually violent predator is a question of law, which we review de novo.[3]

¶9 Chapter 71.09 RCW is a civil statute that authorizes the State to involuntarily commit an individual to a secure treatment facility when he is found by a court or jury to be a sexually violent predator.[4] A sexually violent predator is "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."[5] To commit a person as a sexually violent predator, the State must prove (1) that the individual has been convicted of or charged with a crime of sexual violence, (2) that he suffers from a mental abnormality or personality disorder that causes him to have some difficulty controlling his dangerous behavior, and (3) that the disorder makes him more likely than not to engage in

---

[3] *See In re Det. of Albrecht*, 147 Wn.2d 1, 51 P.3d 73 (2002) (reviewing the question as a matter of law).

[4] RCW 71.09.010.

[5] RCW 71.09.020(16).

predatory acts of sexual violence if not committed to a secure treatment facility.[6]

¶10 The basis for involuntary civil commitment is the person's dangerousness.[7] In order to satisfy due process, the State must establish that a defendant poses a current threat to the community. In *In re Personal Restraint of Young*,[8] our Supreme Court held that, when a defendant has been released from confinement since his last sex offense but before sexually violent predator proceedings are initiated against him, the State must prove that he committed a recent overt act to establish his current dangerousness.[9]

¶11 The legislature subsequently amended the statute to include the recent overt act requirement.[10] RCW 71-.09.060(1) provides that, "[i]f, on the date that the petition is filed, the person was living in the community after release from custody, the state must also prove beyond a reasonable doubt that the person had committed a recent overt act."[11] " 'Recent overt act' means any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act."[12]

¶12 Our Supreme Court has noted that "the statute 'unambiguous[ly] direct[s] that the State need not prove a recent overt act when the subject of a sexually violent predator petition is incarcerated on the day the petition is

---

[6] RCW 71.09.020(16); *In re Det. of Thorell*, 149 Wn.2d 724, 742, 72 P.3d 708 (2003).

[7] *In re Pers. Restraint of Young*, 122 Wn.2d 1, 31, 857 P.2d 989 (1993).

[8] 122 Wn.2d 1, 857 P.2d 989 (1993).

[9] *Young*, 122 Wn.2d at 41-42.

[10] 1995 Wash. Legis. Serv. Ch. 216 (S.S.S.B. 5088) (codified as RCW 71.09.030).

[11] Additionally, RCW 71.09.030(5) authorizes the State to file a petition against "a person who at any time previously has been convicted of a sexually violent offense and has since been released from total confinement and has committed a recent overt act."

[12] RCW 71.09.020(10).

filed.'"[13] Additionally, due process does not require the State to prove a recent overt act when an individual is incarcerated for a sexually violent offense or an act that would qualify as a recent overt act on the day a sexually violent predator petition is filed.[14] Thus, we must determine whether Hovinga was incarcerated for a sexually violent offense or a recent overt act at the time the State filed its petition for commitment.

¶13 We note that Hovinga's situation is distinguishable from the circumstances presented in *In re Detention of Albrecht*.[15] In *Albrecht*, our Supreme Court held that the State must allege a recent overt act when an offender is released from prison on community placement and then returned to total confinement after violating the terms of his community placement.[16] The court distinguished incarceration for violation of community placement from incarceration for a violent sexual offense or recent overt act, explaining that a violation of community placement may entail alcohol consumption, going to the park, or moving without permission, none of which are overt acts for purposes of chapter 71.09 RCW.[17]

¶14 But Albrecht served his full 48-month sentence for a sexually violent crime and was then released to community placement.[18] Therefore, when Albrecht violated the terms of his community placement, he was sent to

[13] *In re Det. of Marshall*, 156 Wn.2d 150, 157, 125 P.3d 111 (2005) (alteration in original) (quoting *In re Det. of Hendrickson*, 140 Wn.2d 686, 693, 2 P.3d 473 (2000)).

[14] *Marshall*, 156 Wn.2d at 157; *Henrickson*, 140 Wn.2d at 689. But the court has held that due process requires the State to plead and prove a recent overt act when, at the time the State files a commitment petition, the defendant is incarcerated for an act that does not constitute a sexually violent offense or recent overt act. *Albrecht*, 147 Wn.2d at 3-4.

[15] 147 Wn.2d 1, 51 P.3d 73 (2002).

[16] *Albrecht*, 147 Wn.2d at 3-4.

[17] *Albrecht*, 147 Wn.2d at 11.

[18] *Albrecht*, 147 Wn.2d at 4. Community placement involves postrelease supervision and begins either when an offender completes his term of confinement or when he is transferred to community custody in lieu of early release. RCW 9.94A.030(7).

prison, not to complete his original prison sentence on the sexually violent crime, but on violation of the terms of community placement. In contrast, Hovinga was released on parole in lieu of serving his full sentence.[19] When Hovinga violated the terms of his parole, he was sent back to prison to complete his original sentence for first degree statutory rape of a child. Statutory rape in the first degree is a sexually violent crime.[20]

¶15 We conclude that Hovinga was incarcerated for a sexually violent offense when the petition was filed. Further, Hovinga's parole was revoked because he committed a recent overt act.

¶16 Hovinga argues that whether he committed a recent overt act is a question of fact for the jury. But, in *In re Detention of Marshall*,[21] our Supreme Court made clear that this determination is a question for the court:

> where the individual is incarcerated on the day the petition is filed, the question is whether the confinement is for a sexually violent act or an act that itself qualifies as a recent overt act. We agree with the analysis in *State v. McNutt*, 124 Wn. App. 344, 350, 101 P.3d 422 (2004), that the inquiry whether an individual is incarcerated for an act that qualifies as a recent overt act is for the court, not a jury. The court must either determine from the materials relating to the individual's conviction whether the individual is incarcerated for an act that actually caused harm of a sexually violent nature, or it must determine whether the individual was incarcerated for an act that qualifies as a recent overt act under a two step analysis described by the Court of Appeals in *McNutt*: first, an inquiry

---

[19] Parole pertains to "that portion of a person's sentence for a crime committed before July 1, 1984, served on conditional release in the community subject to board controls and revocation." RCW 9.95.0001(5). The Board of Prison Terms and Paroles is authorized to release a defendant on parole "after such convicted person has served the period of confinement fixed for him or her by the board, less time credits for good behavior and diligence in work." RCW 9.95.110(1). For crimes committed after July 1, 1984, parole is not an option. The legislature did not repeal the parole system but made it inapplicable to those committing felonies after 1984. RCW 9.95.900; *Addleman v. Bd. of Prison Terms & Paroles*, 107 Wn.2d 503, 507, 730 P.2d 1327 (1986).

[20] RCW 71.09.020(15).

[21] 156 Wn.2d 150, 125 P.3d 111 (2005).

must be made into the factual circumstances of the individual's history and mental condition; second, a legal inquiry must be made as to whether an objective person knowing the factual circumstances of the individual's history and mental condition would have a reasonable apprehension that the individual's act would cause harm of a sexually violent nature.[22]

¶17 We agree with the trial court that the episodes admitted in Hovinga's parole revocation hearing constituted recent overt acts. Hovinga was returned to prison after being videotaped following young girls in a Bon Marche store. Hovinga admitted that he had been masturbating while following the girls around the store. He acknowledged that he had engaged in similar behavior in malls six to eight times. Knowing Hovinga's history and mental condition, an objective person would have a reasonable apprehension that Hovinga's acts would cause harm of a sexually violent nature. Because Hovinga was incarcerated for a recent overt act at the time the State filed a commitment petition, the State was not required to plead and prove a recent overt act to the jury.

## B. Evidentiary Ruling

¶18 Next, Hovinga argues that the trial court abused its discretion by not allowing the defense expert to testify about Dr. Milloy's e-mail under ER 703. We will not disturb a trial court's ruling on the admissibility of evidence absent an abuse of the court's discretion.[23] The court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds.[24]

¶19 ER 703 provides that an expert may base his or her opinion on facts or data made known to the expert either before or during trial, and the facts or data need not be admissible if they are of a type reasonably relied upon by experts in the field. But the court precluded Dr. Wollert

[22] *Marshall*, 156 Wn.2d at 158.

[23] *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

[24] *Powell*, 126 Wn.2d at 258.

from testifying about Dr. Milloy's e-mail under ER 703 because it was generated late in the trial proceedings.

¶20 The trial court has discretion to weigh the probative value of evidence against prejudice to the other party or the potential for undue delay.[25] Of significance here is that the e-mail, although relevant, would have simply added further support for Dr. Wollert's opinion that offenders over age 60, such as Hovinga, have a very low recidivism risk. Hovinga did not introduce the e-mail as substantive evidence.

¶21 Dr. Wollert opined that recidivism risks decrease significantly with age. He relied on several studies to support his opinion. He testified specifically about Dr. Milloy's study, in which she tracked 89 convicted sex offenders for a number of years to determine their recidivism rates. Dr. Wollert testified that Dr. Milloy's results showed that the recidivism rate for offenders over age 45 was 16.7 percent. He also testified about a study conducted by Dr. Karl Hanson, which showed that the estimated recidivism base rate for offenders over age 60 was between 0.029 and 2.9 percent.

¶22 In her e-mail to Hovinga's attorney, Dr. Milloy clarified that there were only two offenders in her study who were over age 60, and neither of them were convicted of new offenses during the period of observation. This information did not have significant probative value. Dr. Wollert was permitted to testify that the recidivism rate for offenders over 60 was very low, and he supported his opinion with various facts and data. And, because the State rested its case on the same day its motion in limine was heard, the introduction of the e-mail through Dr. Wollert's testimony may have caused undue delay in the proceedings.

---

[25] ER 403; *State v. Russell*, 125 Wn.2d 24, 78, 882 P.2d 747 (1994).

The court did not abuse its discretion in precluding Dr. Wollert from testifying about it.

¶23 Affirmed.

COLEMAN and DWYER, JJ., concur.

Review denied at 158 Wn.2d 1024 (2006).