**FILED**
**APRIL 26, 2016**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | |
| | ) | No. 32882-1-III |
| | ) | |
| | ) | |
| JAMES EDWARD JONES, | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

FEARING, C.J. — James Jones assigns three errors to his involuntary commitment as a sexually violent predator. First, he argues the trial court violated his due process rights by failing to review all pleadings the parties submitted for a *Frye* hearing. *Frye v. United States*, 293 F. 1013, 34 A.L.R. 145 (D.C. Cir. 1923). Second, he contends the trial court erred when allowing the State's expert witness to testify to his chance of recidivism based on the Structured Risk Assessment-Forensic Version (SRA-FV) actuarial instrument. He maintains the SRA-FV is a novel risk assessment that fails the *Frye* test. Finally, he argues the State failed to plead and prove that he committed a

recent overt act, a necessary element to his commitment since he was no longer in total confinement for a sexually violent act but incarcerated for a drug-related community custody violation. We reject Jones's first two contentions. We agree with his third argument and remand for a new trial.

## FACTS

In 1997, a jury convicted James Jones of two counts of second degree rape and one count of unlawful imprisonment. The trial court sentenced him to sixteen years and six months' incarceration and three years' community custody. The Department of Corrections (DOC) released him to community custody on December 9, 2010.

DOC sanctioned James Jones for various substance abuse violations during his community custody. On March 4, 2011, Jones' urine tested positive for marijuana, and the DOC hearing officer sentenced him to seventeen days in jail. On August 3, 2011, Jones' urine tested positive for methamphetamine, and the hearing officer sentenced him to thirty days in jail. On September 5, 2011, Jones smoked marijuana.

Before any hearing for his September 5 community custody breach and on September 6, 2011, James Jones engaged in "rough sex" with a female at his home. Clerk's Papers (CP) at 1187. We know none of the details of the sexual activity. When police questioned him about bruises, abrasions, and scars suffered by his purported victim, Jones characterized the sex as "rough." CP at 1187. The police arrested Jones,

2

and the State charged him with first degree rape and unlawful imprisonment. At the Yakima County jail, a community corrections officer collected Jones's urine, which tested positive for marijuana.

On September 21, 2011, DOC conducted a third community placement hearing for James Jones at the Yakima County jail. At the hearing, Jones conceded marijuana use on September 5. The DOC hearing officer ordered Jones returned to total confinement to serve the remainder of his prison sentence for the 1997 convictions. The officer noted Jones' earlier community custody violations, his failure to seek help, and his risk to the community when he uses drugs.

On November 14, 2012, James Jones pled guilty to third degree assault for the September 6, 2011 incident, and the State dismissed the first degree rape count. The trial court sentenced Jones to one year of incarceration with a year's credit for time served. Therefore, Jones did not thereafter serve time for the 2011 assault, but he remained imprisoned for the 1997 convictions.

## PROCEDURE

On February 12, 2013, while James Jones remained in incarceration, the State of Washington filed this petition to commit Jones as a sexually violent person. Prior to trial on the petition, the trial court conducted a *Frye* hearing to determine whether the State could admit as evidence use of the SRA-FV, a dynamic risk assessment tool for sex

3

offenders, to establish that Jones would likely reoffend if released into the community. In advance of the hearing, the parties filed hundreds of pages of declarations, briefs, articles, and studies. The *Frye* hearing lasted two days. The State called Dr. Amy Phenix and Dr. Harry Hoberman as its experts, and Jones called Dr. Brian Abbott as his expert.

At the conclusion of the *Frye* hearing, the trial court stated that the court

> actually had an opportunity to go through all of the mounds of paperwork that the attorneys had given me on this issue. So I was able to finally get through all of it. I have read the briefs, some of the cases, but I didn't go through all of the attachments and the declarations.

2 Verbatim Report of Proceedings (VRP) (May 29, 2014) at 266-67. The trial court found the SRA-FV to be generally accepted in the scientific community and that generally accepted methods of applying the test exist that can produce reliable results. James Jones did not object to the trial court rendering a ruling without reviewing all declarations and attachments.

At the beginning of the trial on the sexually violent person petition, James Jones filed a *Marshall* motion, seeking a trial court determination as a matter of law whether his drug-related community custody violations and assault conviction qualified as recent overt acts under chapter RCW 71.09.020(12). *In re Det. of Marshall*, 156 Wn.2d 150, 125 P.3d 111 (2005). Jones requested that the trial court oblige the State to plead and prove a recent overt act. He argued that his recent incarceration resulted from community custody violations, that those violations involved no sexual activity, and that

4

the violations did not qualify as recent overt acts under the statute.

The trial court denied James Jones' motion. The court found that Jones' incarceration at the time the State filed its petition was pursuant to his 1997 sexually violent offense, not for community custody violations. The trial court therefore concluded that the State need not plead or prove that Jones committed a recent overt act. The trial court declined to decide whether Jones' September 2011 assault qualified as a recent overt act.

During trial, the State called Dr. Harry Hoberman to establish James Jones' level of dynamic risk for reoffending under the SRA-FV. Hoberman concluded that Jones scaled in the "very high" category to reoffend and that his likelihood of reoffending was thirty-six percent over ten years. 4 VRP (Oct. 9, 2014) at 563. Psychologist Brian Abbott testified and opined that Jones did not meet the criteria for involuntary commitment. The jury found Jones to be a sexually violent predator, and the trial court committed Jones to the State of Washington Department of Social and Health Services.

## LAW AND ANALYSIS

### Trial Court Review of Pleadings

On appeal, James Jones first argues that the trial court's failure to review some pleadings during the *Frye* hearing violated his due process rights. We decline to address this claimed error because Jones did not preserve the assignment of error for appeal.

5

When the trial court announced the court had not read all of the declarations and attachments, Jones never demanded that the court review all pleadings or objected to the court issuing a ruling without this additional review.

RAP 2.5 formalizes a fundamental principle of appellate review. The first sentence of the rule reads:

> **(a) Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court.

No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944).

Good sense lies behind the requirement that arguments be first asserted at trial. There is great potential for abuse when a party does not raise an issue below because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal. *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). The theory of preservation by timely objection also addresses several other concerns. The rule serves the goal of judicial economy by enabling trial courts to correct

mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d 742, 749-50, 293 P.3d 1177 (2013); *State v. Scott*, 110 Wn.2d 682, 685-88, 757 P.2d 492 (1988).

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right," an exception on which a criminal appellant commonly relies. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d at 686-87. James Jones does not claim the trial court's failure to review all pleadings constitutes manifest constitutional error.

This appeal fulfills the rationale behind the waiver of error by failing to object below. The trial court was inundated with pleadings concerning the SRA-FV. The trial court noted the "mounds of paperwork" examined. 2 VRP (May 29, 2014) at 266. Jones could have asked the trial court which pages he did not review, but Jones did not raise this question. Because Jones did not object below, we do not know which of the 1,500

pages of pleadings the trial court did not review. We have no way to adjudge the importance of the declarations and attachments not reviewed. We do not know to what pleadings the attachments were affixed. For all we know, the unreviewed pleadings were cumulative of other pleadings or testimony of the experts during the two-day trial. Jones could have insisted that the trial court read all pleadings, at which time the trial court could have delivered a reasoned explanation for omitting the review.

## *Frye* Test

James Jones next assigns error to the trial court's ruling that the SRA-FV tool satisfies *Frye*. Washington applies the *Frye* test to gauge whether expert testimony premised on scientific evidence may be admissible. *State v. Copeland*, 130 Wn.2d 244, 261, 922 P.2d 1304 (1996). *Frye* requires that expert testimony be based on principles generally accepted in the scientific community. *State v. Canaday*, 90 Wn.2d 808, 812, 585 P.2d 1185 (1978). The *Frye* test is two prong: (1) whether the underlying theory is generally accepted in the scientific community, and (2) whether there are techniques utilizing the theory that are capable of producing reliable results. *State v. Riker*, 123 Wn.2d 351, 359, 869 P.2d 43 (1994). The purpose of the *Frye* test is to exclude, from a trial, novel scientific evidence not accepted in the scientific community. *State v. Copeland*, 130 Wn.2d at 256. Disputes concerning scientific validity should be resolved by the relevant scientific community. *United States v. Addison*, 498 F.2d 741, 743-44

8

(D.C. Cir. 1974); *State v. Vandebogart*, 136 N.H. 365, 616 A.2d 483, 489 (1992). Only after the technique has been scrutinized and tested successfully in the scientific community will the technique receive judicial recognition. *State v. Copeland*, 130 Wn.2d at 256-57.

Even before Washington adopted the community protection act of 1990, chapter 71.09 RCW, which includes provisions for the commitment of sexually violent predators, forensic psychiatrists began formulating tools and protocols for predicting the likelihood of a sexually violent offender to repeat similar criminal behavior. Psychiatrists and psychologists refer to the tools as actuarial instruments, which, when widely accepted by the professions, become validated actuarial instruments. Dr. David Thornton, Research Director of the Sand Ridge Secure Treatment Center in Wisconsin, developed the first validated actuarial instrument, labeled Static-99, in 1999. The term "static" derives from the static factors, concerning an offender's history, reviewed through the instrument. Other validated actuarial instruments constructed by Thornton or other psychologists include Static-99 Revised, Static-2000, Static-2002 Revised, and Stable-2007. These later versions introduced dynamic factors such as the aptitudes, interests, traits, and thought patterns of the defendant. This case involves the acceptability of the latest actuarial instrument, Structured Risk Assessment-Forensic Version (SRA-FV) developed by David Thornton in 2010.

9

This court on two occasions has affirmed other trial court findings that the SRA-FV instrument satisfies the *Frye* test. *In re Det. of Ritter*, No. 30845-6-III, 2016 WL 503128, *4 (Wash. Ct. App. Feb. 4, 2016); *In re Det. of Pettis*, 188 Wn. App. 198, 211, 352 P.3d 841, *review denied*, 184 Wn.2d 1025, 361 P.3d 748 (2015). Dr. Amy Phenix provided similar testimony before the trial courts in both cases. James Jones raises legitimate arguments concerning the legitimacy of the SRA-FV tool. He emphasizes the low inter-rater reliability of the SRA-FV. One administrator of the test may arrive at a different result than another administrator. Still, both *Ritter* and *Pettis* ruled against these concerns.

The *Frye* test addresses the admissibility of scientific evidence. One might question whether the SRA-FV must pass the *Frye* test, since the SRA-FV is not strictly scientific, and then, assuming the *Frye* test applies, question whether the instrument is sufficiently scientific to pass muster. Nevertheless, other courts have applied the *Frye* test to and admitted expert testimony from the soft sciences, such as economics and psychology. *Andrade Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 617 (E.D. Tex. 1998); *United States v. Hall*, 974 F. Supp. 1198 (C.D. Ill. 1997), *aff'd*, 165 F.3d 1095 (7th Cir. 1999); *United States v. Scholl*, 959 F. Supp. 1189 (D. Ariz. 1997), *aff'd*, 166 F.3d 964 (9th Cir. 1999); *John Doe 76 C v. Archdiocese of St. Paul & Minneapolis*,

No. 32882-1-III
*In re Det. of Jones*

817 N.W.2d 150 (Minn. 2012); *Commonwealth v. Sliech-Brodeur*, 457 Mass. 300, 930 N.E.2d 91 (2010); *Nations v. State*, 944 S.W.2d 795 (Tex. App. 1997).

## Recent Overt Act

We arrive at James Jones' last assignment of error. Jones contends the trial court mistakenly ordered his commitment, after the jury trial, without insisting that the State prove a recent sexually violent act, known under the sexually violent predator law as a "recent overt act." We agree.

To protect the public, the State may constitutionally confine dangerous individuals who suffer from mental illnesses or disorders even if the mental condition is untreatable. *Kansas v. Hendricks*, 521 U.S. 346, 366, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997); *In re Det. of Gaff*, 90 Wn. App. 834, 845, 954 P.2d 943 (1998). Therefore, RCW 71.09.060 authorizes the State of Washington to involuntarily commit a person determined to be a "sexually violent predator" after he or she serves a sentence for a crime. The State may file a petition alleging an individual is a sexually violent predator when "it appears that . . . [a] person who at any time previously has been convicted of a sexually violent offense is about to be released from total confinement." RCW 71.09.030(1). The State may also wait until after release from incarceration to file the petition.

A "sexually violent predator" is someone "convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which

11

makes the person likely to engage in predatory acts of sexual violence." RCW 71.09.020(18). RCW 71.09.020(8) defines "[m]ental abnormality" which "is tied directly to present dangerousness." *In re Det. of Henrickson*, 140 Wn.2d 686, 692, 2 P.3d 473 (2000). This tie to present dangerousness is constitutionally required, as recognized in *In re Personal Restraint of Young*, 122 Wn.2d 1, 27, 857 P.2d 989 (1993), because due process requires that an individual must be both mentally ill and presently dangerous before he or she may be indefinitely committed. *In re Det. of Marshall*, 156 Wn.2d at 157 (2005).

Proof of current dangerousness is constitutionally required to confine an offender. *In re Det. of Albrecht*, 147 Wn.2d 1, 10, 51 P.3d 73 (2002). Therefore, the Washington sexually violent predator statute is premised on a finding of the present dangerousness of the committee. *In re Det. of Henrickson*, 140 Wn.2d at 692. Proof of a recent overt act may be required to establish current dangerousness. *In re Det. of Marshall*, 156 Wn.2d at 157. A "[r]ecent overt act" is:

> any act or threat, or combination thereof that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act.

RCW 71.09.020(12). Nevertheless, the State must prove an individual committed a recent overt act only if, on the day the State files the petition, the individual lived in the community after release from custody. *In re Det. of Marshall* 156 Wn.2d at 157.

12

RCW 71.09.030(1) reads in relevant part:

> A petition may be filed alleging that a person is a sexually violent predator and stating sufficient facts to support such allegation when it appears that: (a) A person who at any time previously has been convicted of a sexually violent offense *is about to be released from total confinement;* . . . or (e) a person who at any time previously has been convicted of a sexually violent offense and has *since been released from total confinement* and has committed a *recent overt act.*

(Emphasis added.) RCW 9.94A.030(51) defines "total confinement" as:

> "Total confinement" means confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or any other unit of government for twenty-four hours a day, or pursuant to RCW 72.64.050 and 72.64.060.

In turn, the second paragraph of RCW 71.09.060 partially declares

> (1) . . . If, on the date that the petition is filed, the person was *living in the community* after release from custody, the state must also prove beyond a reasonable doubt that the person had committed a *recent overt act.*

(Emphasis added.)

When an individual remains incarcerated at the time the State files its petition for commitment, no evidence of a recent overt act is required because such a requirement would create a standard that would be impossible to meet. *In re Pers. Restraint of Young,* 122 Wn.2d at 41 (1993). This rationale assumes that the offender cannot engage in sexually violent acts in prison. The law presumes that prisoners have no opportunity to commit a recent overt act while incarcerated. *In re Det. of Albrecht,* 147 Wn.2d at 8-9

13

(2002). The rationale does not apply when the State released the offender into the community even with supervision. *In re Det. of Albrecht*, 147 Wn.2d at 9. The supervision does not extend round the clock. The offender in community custody possesses an opportunity to engage in sexually violent acts and thus the State does not face the impossibility of showing current dangerousness.

In this appeal, we must decide whether the State must prove a recent overt act. DOC released James Jones to community custody on December 9, 2010. Thereafter, he thrice returned to jail for community custody violations of substance abuse. When, on February 12, 2013, the State filed the petition for commitment as a sexually violent predator, Jones remained in prison. One could characterize the reason for his imprisonment, in February 2013, as the result of a community custody violation or the result of returning to prison for the 1997 second degree rape conviction. The community custody violations were not sexually violent in nature and thus do not qualify as "recent overt acts." The 1997 rapes qualify as an "overt act" for purposes of committing the offender as a sexually violent person, but the question remains whether this court should consider the rapes "recent overt acts" when James Jones spent time in the community after his imprisonment for the rapes.

Whether the State must plead and prove a recent overt act in order to commit a person as a sexually violent person is a question of law and reviewed de novo. *In re Det.*

14

*of Hovinga*, 132 Wn. App. 16, 20, 130 P.3d 830 (2006). Based on *In re Detention of Albrecht*, 147 Wn.2d at 51 (2002), *In re Detention of Broten*, 115 Wn. App. 252, 62 P.3d 514 (2003), and *In re Detention of Davis*, 109 Wn. App. 734, 37 P.3d 325 (2002), we rule that the State needed to plead and prove a recent overt act.

*In re Detention of Albrecht* controls this appeal. Our state high court framed its issue: whether the State must allege a recent overt act in order to commit an offender as a sexually violent predator when the offender has been released from total confinement into the community and then returned to total confinement. The Supreme Court concluded that "after a person has been released into the community, due process would be subverted by failing to require proof of a recent overt act." 147 Wn.2d at 4.

After Robin Albrecht served his four-year sentence for child molestation, the State released Albrecht into community placement in accordance with his sentence. A condition of community placement was no direct or indirect contact with minor children. Thirty days after his release from incarceration, Albrecht offered two boys fifty cents to follow him. As a result, the court modified Albrecht's community supervision and imposed one hundred twenty days in jail. While Albrecht resided in jail, the State filed a petition for a civil commitment as a sexually violent predator. After defense counsel deposed the two young boys, counsel warned the State that the boys' testimony did not support a finding of a recent overt act. The State then moved to amend the petition to

allege it need not prove a recent overt act because Albrecht remained in prison, at the time of the petition's filing, for child molestation. The trial court permitted the amendment, but the Supreme Court reversed.

In *Albrecht*, the state high court held that the State must prove beyond a reasonable doubt a recent overt act when the State files a sexual predator petition on an offender (1) who has been released from confinement, (2) but is incarcerated the day the petition is filed, (3) on a charge that does not constitute a recent overt act. *In re Det. of Albrecht*, 147 Wn.2d at 11 n.11. The court observed that another person on community placement release may be found in violation of his release for something as minor as consuming alcohol or failing to report to his community corrections officer. The Supreme Court remanded the case for the State to show a recent overt act at trial.

More reason exists to require a recent overt act in this appeal than in *Albrecht*. James Jones returned to prison because of use of a controlled substance, not because of any sexual act. Robin Albrecht returned to prison for accosting young boys.

In *In re Detention of Broten*, 115 Wn. App. 252 (2003), this court followed the Supreme Court's lead in *Albrecht*. We reversed a civil commitment because the trial court did not require the State to prove a recent overt act. The State incarcerated Richard Broten for rape of his infant daughter. Broten gained release into community placement with supervision. While on release, the State returned Broten to prison for violation of

16

conditions of his community placement by cruising malls and parks, encountering a prostitute, possessing pornography, masturbating to fantasies of children, and pursuing a relationship with a mother of a small child. We reasoned that equating incarceration for community custody violations with imprisonment for a sexually violent offense violates due process. One in community placement may be returned to prison if a violation hearings judge determines the offender violated a community placement condition by a preponderance of the evidence. The sexually violent predator statute requires proof beyond a reasonable doubt. Broten's release into the community afforded him the opportunity to overtly act. Thus, the State no longer faced an impossible burden to show a recent overt act.

*In re Detention of Davis*, 109 Wn. App. 734, 37 P.3d 325 (2002) repeats the outcomes in *Albrecht* and *Broten*. Dale Davis violated a community placement term prohibiting him from contact with minors under the age of eighteen. This court remanded the case for a trial on the question of whether Davis' violation of conditions of community custody sufficed as a sexually violent recent overt act.

The Supreme Court in *In re Detention of Marshall*, 156 Wn.2d 150 (2005), impliedly confirmed the holding in *In re Detention of Albrecht*. The *Marshall* court excused the State from establishing a recent overt act, but distinguished its facts from the *Albrecht* facts on the basis that Marshall was jailed for a sexually violent act on the date

17

that the State filed the petition for confinement. In *Albrecht*, the offender had been released into the community following total confinement for the sexually violent act and was incarcerated again for a violation of community placement conditions.

The State relies on *In re Detention of Kelley*, 133 Wn. App. 289, 135 P.3d 554 (2006). Timothy Kelley was convicted in 1972 of raping a twelve-year-old girl. He was convicted in 1980 of statutory rape of a nine-year-old girl. The 1980 conviction led to a twenty-year sentence. Nevertheless, the trial court suspended the sentence and sent Kelley to Western State Hospital to undergo sexual psychopathy treatment. While on outpatient status, Kelley assaulted his girlfriend. The court revoked his suspended sentence and sent him to jail to serve his twenty-year sentence. He remained in jail at the time the State filed its sexually violent predator commitment petition. We affirmed the commitment and ruled that the State did not need to show a recent overt act, despite the outpatient release. We characterized *Albrecht*, *Davis* and *Broten* as carving a narrow exception to the rule that the State need not prove a recent overt act when the offender is totally confined. We distinguished the suspended sentence from the community placement releases in *Albrecht*, *Davis*, and *Broten*. We reasoned that Kelley's confinement at the time the State filed its petition was the result of the 1980 rape, not the assault of his girlfriend while on outpatient release.

This ruling in *Kelley* should be probed. Regardless of benefiting from a suspended

18

sentence and being on community placement, Timothy Kelley gained the opportunity to commit a recent overt act. The opportunity to commit another violent sexual act generates the requirement that the State prove a recent overt act. The constitution allows a civil commitment only if the offender is currently dangerous.

*In re Detention of Kelley* followed *In re Detention of Hovinga*, 132 Wn. App. 16 (2006). In *Hovinga*, this court also held that the State need not allege and prove a recent overt act. The State imprisoned Deryle Hovinga in 1981 for statutory rape of a nine-year-old girl. In 1988, Hovinga was released into the community on parole. The State returned Hovinga to prison in 1992 because of parole violations. He remained in prison for another eleven years, and, before his release, the State filed a petition for commitment. The parole violations included following young girls in a Bon Marche, while being videotaped. He masturbated as he trailed the minors. He admitted at least six occasions of similar behavior.

*Hovinga* may have alternative rulings. This court distinguished *Albrecht* on the basis that Hovinga was released on parole in lieu of serving his full sentence, as opposed to receiving community placement. This first ruling should be questioned as the *Kelley* ruling was doubted.

The *Hovinga* court also affirmed the commitment of Deryle Hovinga on the ground that the parole violation constituted a sexually violent act. Since Hovinga

returned to prison and remained in prison at the time of the filing of the petition, the State did not need to prove another recent overt act.

We cannot reconcile *Kelley* and *Hovinga* with *Albrecht*, *Davis*, and *Broten*. The distinction between release from parole and an outpatient release, on the one hand, and community custody on the other hand has no legitimate difference. Nor does the difference between community placement, the predecessor of community custody, and community custody establish a reason to distinguish the facts in *Albrecht*, *Davis*, and *Broten* from the circumstances of James Jones. Regardless of the label given the release into the community, the offender no longer sits in total confinement. The offender possesses the ability and freedom to commit another sexually violent crime. The offender has the opportunity to commit a recent overt act.

We need not reconcile this court's various opinions. *Albrecht*, as a Supreme Court decision, controls our appeal. Under *Albrecht*, the State must show a recent overt act in order to commit James Jones.

The State also argues that the "rough sex" incident on September 6, 2011, for which James Jones pled guilty to assault qualifies as a recent overt act or frees it from showing a recent overt act because Jones returned to total confinement as a result of the assault. We disagree. We only have sketchy facts and lack any testimony under oath. We cannot judge whether the incident involved an act of violent sexual predation. We

20

would take from James Jones his right to have a jury determine beyond a reasonable doubt whether the September 6 incident qualifies as a recent overt act.

The State also forwarded a similar argument in *In re Detention of Davis*, 109 Wn. App. 734 (2002). The *Davis* court rejected the argument. The court noted that the facts in the record of Davis' unauthorized contact with the 15-year-old boy did not conclusively prove that Davis' conduct was of a sexually violent nature or created a reasonable apprehension of such harm.

We do not wish someone with the current propensity of sexual violence to be free to prey on other victims. We note, however, that the State, if it deemed James Jones to be a sexually violent person as a result of the 1997 rapes, could have filed a petition before Jones' release to community custody on December 9, 2010. The State, on remand, remains free to confine James Jones as a sexually violent predator if it proves beyond a reasonable doubt the "rough sex" on September 6, 2011 to be a recent overt act.

CONCLUSION

We reverse the trial court's judgment referring James Jones for civil commitment as a sexually violent predator. We remand for a trial on whether James Jones committed a recent overt act sufficient to commit him as a sexually violent person.

A majority of the panel has determined this opinion will not be printed in the

21

No. 32882-1-III
*In re Det. of Jones*

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Korsmo, J.

22