**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RONALD BARRANCO,
　　　　　*Plaintiff-Appellant*,

　　　　　v.

3D SYSTEMS CORPORATION, a
Delaware corporation; 3D
SYSTEMS, INC., a California
corporation,
　　　　　*Defendants-Appellees*.

No. 18-16708

D.C. No.
1:13-cv-00412-LEK-RLP

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted October 24, 2019
Honolulu, Hawaii

Filed March 12, 2020

Before: SUSAN P. GRABER, MILAN D. SMITH, JR.,
and PAUL J. WATFORD, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

### Evidence / Equity Jurisdiction

The panel affirmed the district court's evidentiary rulings, and reversed and vacated the monetary judgment in favor of 3D Systems Corporation on its breach of contract counterclaim, in a diversity action involving a purchase and sale agreement documenting 3D Systems' acquisition of 3D printing websites from plaintiff Ronald Barranco.

Plaintiff owned several 3D printing businesses and technologies, including Print3D, and two websites, www.stereolithography.com and www.laserintering.com (the Domains); and plaintiff agreed to sell Print3D and the Domains to 3D Systems in two separate contracts.

The panel held that the district court did not abuse its discretion by denying plaintiff's motion *in limine* to admit the Print3D arbitration award at trial. The panel rejected plaintiff's contention that *Graef v. Chemical Leaman Corp.*, 106 F.3d 112 (5th Cir. 1977), supported an admission of the arbitration award. The panel also held that it was not error for the district court to find that the danger of undue prejudice from admitting the arbitration award outweighed its probative value. The panel concluded that the district court did not abuse its discretion by excluding evidence of the Print3D arbitration award.

The panel held that the district court did not abuse its discretion by excluding evidence of whether 3D Systems

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

promised to invest substantial resources in the Domains. The panel saw no error insofar as the evidence purportedly concerned an element of plaintiff's breach of contract claim. The panel further held that even if it were to consider the court's exclusion of the evidence as a measure of expectation damages an abuse of discretion, any error was harmless.

The district court exercised equitable jurisdiction to award 3D Systems restitution in the form of monetary relief. The panel held that the district court erred in concluding that 3D Systems had a right to an equitable accounting. The panel further held that the district court erred by relying solely on the text of the parties' contract to grant equitable relief. Accordingly, the panel reversed the monetary award for 3D Systems and vacated the corresponding judgment against plaintiff.

## COUNSEL

Mark Poe (argued), Randolph Gaw, Samuel Song, and Victor Meng, Gaw | Poe LLP, San Francisco, California, for Plaintiff-Appellant.

Thomas Benedict (argued) and Dawn T. Sugihara, Farm Benedict Sugihara LLP, Honolulu, Hawaii; Nikole Setzler Mergo, Nexsen Pruet, LLC, Columbia, South Carolina; for Defendants-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

Plaintiff Ronald Barranco sued Defendants 3D Systems Corporation and 3D Systems, Inc. (together, 3D Systems), for breach of contract and breach of the implied covenant of good faith and fair dealing, among other claims. The claims arose out of a purchase and sale agreement (PSA) documenting 3D Systems' acquisition of 3D printing websites from Barranco. In turn, 3D Systems counterclaimed that Barranco breached a covenant not to compete (CNTC) contained in the PSA.

A jury heard Barranco's claims and 3D Systems' counterclaim. The district court excluded from the trial evidence of an arbitration award in Barranco's favor on his claims arising from a different contract related to a separate acquisition. The court also excluded testimony of alleged statements by 3D Systems' CEO about how much Barranco would gain as part of the acquisition contemplated by the PSA. The jury absolved 3D Systems of liability on Barranco's breach of contract claim and so did not decide Barranco's breach of covenant claim. The jury found, however, that Barranco had breached the CNTC. Instead of submitting the issue of non-competition damages to the jury, the district court exercised equity jurisdiction to enter a money judgment against Barranco.

Barranco appeals the district court's cited evidentiary rulings and also argues that the court improperly exercised equity jurisdiction to enter a monetary award against him. We affirm the evidentiary rulings but reverse the monetary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Barranco owned several 3D printing businesses and technologies, including Print3D, and two websites, www.stereolithography.com and www.lasersintering.com (the Domains), which brokered the manufacture of 3D printed parts. Barranco agreed to sell Print3D and the Domains to 3D Systems in two separate contracts.

## I.   The Acquisition of the Domains

Barranco sold the Domains to 3D Systems pursuant to the PSA. Therein, Barranco granted 3D Systems certain rights in the Domains in exchange for: (1) "an immediate cash payment of $250,000"; (2) "royalty payments based on sales generated by the" Domains; and (3) "a right to exercise a buyout, which would terminate the right to Royalty Payments and grant entitlement to a lump sum" based on an average royalty generated by the Domains.

The PSA also contained a provision barring Barranco from competing with 3D Systems, working for or having any role or interest in a business that competed with 3D Systems, and developing or designing competing products. As part of the CNTC, the parties agreed that:

> any violation of such restriction will result in irreparable injury to 3D Systems for which damages will not be an adequate remedy. Mr. Barranco therefore acknowledges that if he violates any such restrictions, 3D Systems shall be entitled to preliminary and injunctive relief as well as to an equitable accounting of earnings, profits and other benefits arising from such violation.

The PSA also contained a cumulative rights clause that did not limit 3D Systems' rights or remedies for a breach of the PSA, "whether at law, in equity, by contract or otherwise."

Barranco testified in his deposition that, while the parties negotiated the sale of the Domains, 3D Systems' CEO Abraham Reichental promised to invest substantial resources in the Domains in a way that would increase royalty payments. Barranco understood that he would earn $5 million in the transaction contemplated by the PSA.[1] During the negotiation, Reichental jotted down notes to illustrate the deal's proposed structure, listing $250,000 as the buyout payment, the split royalties and fees, and other compensation. Reichental also scrawled "5%" next to the $250,000 buyout amount. According to Barranco, Reichental stated as he made the notes and totaled the various payment provisions, "There's our deal. That's how we get to $[5] million." Barranco thus claims that the $250,000 payment represented 5% of the total he would earn from the deal overall, and 3D Systems effectively promised that he stood to receive $5 million pursuant to the PSA's buyout provision.

Despite his expectations, royalties from the Domains were significantly less than Barranco had anticipated, amounting to just over $200,000 per year over the five years following the acquisition, and Barranco did not earn $5 million from the acquisition. Barranco sued 3D Systems, alleging that it had breached the PSA by failing to invest substantial resources in the Domains so that the Domains would generate sufficient royalties to produce the payments the parties discussed during negotiations over the PSA.

---

[1] The parties refer interchangeably to $5 million and $6 million as the figure in Reichental's notes. For consistency, we use the $5 million figure.

Barranco also claimed a breach of the covenant of good faith and fair dealing.  3D Systems counterclaimed, alleging that Barranco breached the CNTC by designing and developing a technology to compete with 3D Systems.

## II.  The Print3D Acquisition and Arbitration

In a separate Print3D contract, Barranco conveyed the Print3D technology to 3D Systems.  In that contract, 3D Systems promised to "continue the Print3D Business as a separate profit center and as a going concern in the ordinary and proper course" for a certain period of time, and Barranco was to be the manager of that business.  In consideration of the sale of the Print3D technology, Barranco was to receive from 3D Systems an up-front payment, stock, and various earn-out payments calculated as a percentage of Print3D's revenue.

In a separate lawsuit, Barranco sued 3D Systems for allegedly breaching the Print3D agreement and implied covenants of good faith and fair dealing by failing to maintain and promote Print3D as a viable business.  The parties arbitrated those claims pursuant to a dispute resolution clause in the Print3D agreement.  The arbitrator ultimately found for Barranco on those claims and determined that the effect of 3D Systems' conduct "was to block . . . Mr. Barranco . . . from ever receiving any earn out payments" under the contract.

## III. The Jury Trial on Liability

Barranco's contract claims and 3D Systems' breach of contract counterclaim in this case proceeded to a jury trial. The district court excluded the Print3D arbitration award from trial as irrelevant and, alternatively, as unduly prejudicial and likely to confuse the jury.  The court also

excluded reference to the $5 million figure from Reichental's notes, which Barranco attempted to offer as a measure of expectancy damages for his contract claims.

At the close of evidence and before submission to the jury, Barranco moved for judgment as a matter of law (JMOL) on 3D Systems' counterclaim because 3D Systems had not presented any evidence of damages. 3D Systems responded that, in lieu of damages, it was entitled to an equitable accounting pursuant to the PSA's terms, and further invoked an employee's duty of loyalty to argue that "the appropriate measure of damages was disgorgement of profits generated" on the job.[2] The court denied Barranco's JMOL motion. The special verdict form to which the parties agreed contained no provision for the jury to determine 3D Systems' damages or other remedies in the event the jury found that Barranco had breached the CNTC.

The jury returned a verdict for 3D Systems on both Barranco's breach of contract claim and 3D Systems' breach of contract counterclaim. On the former, the jury found that 3D Systems did not promise to invest substantial resources in the Domains. Thus, the jury did not reach the issue of Barranco's claimed damages. On 3D Systems' counterclaim, the jury found only that Barranco had breached the CNTC.

## IV. The Bench Trial on Equitable Relief

After the jury returned its verdict, the district court held a bench trial to conduct an equitable accounting as 3D Systems' remedy for Barranco's CNTC breach. Based on

---

[2] Although Hawaii law recognizes a claim for an employee's breach of the duty of loyalty owed to the employer, 3D Systems did not counterclaim on that theory.

the jury's finding that Barranco had breached the CNTC, the court determined that the PSA entitled 3D Systems to "an equitable accounting of earnings, profits and other benefits arising from such violation(s)." Because the jury found only that Barranco had breached the CNTC, the court first made findings as to what conduct constituted the breach. The court found that Barranco had violated the CNTC by, among other things, accessing and sharing 3D Systems' proprietary technology with people who were not employed by 3D Systems, and by undertaking to develop an online quotation system for other 3D-printing businesses.

The court next performed an accounting of the "earnings, profits and other benefits arising from" the violations of the CNTC. It found that there was "no evidence" that Barranco derived any benefit from violating the CNTC and, further, that the violations did not cause 3D Systems "to lose sales, to lower its prices, or to suffer reduced profit margins" or otherwise suffer harm. The court then found that the PSA did not "fully address" the circumstances presented, "where violations of the Non-Compete Provision stopped short of commercial exploitation and no earnings, profits, or other benefits have yet arisen from the violation." As a result, the court determined that it had discretion to award other equitable remedies, such as restitution, "to afford complete relief" as a matter of its equity jurisdiction. The court calculated the portion of the amounts Barranco received under the PSA as consideration for his promise not to compete with 3D Systems and ordered them disgorged. The court entered judgment for 3D Systems, ordering Barranco to disgorge more than $500,000, plus prejudgment interest. Barranco timely appealed.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review evidentiary rulings for abuse of discretion and reverse only if a ruling is "erroneous *and* prejudicial." *Wagner v. Cty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013) (emphasis added). "When error is established, we must presume prejudice unless it is more probable than not that the error did not materially affect the verdict." *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 949 (9th Cir. 2009) (internal quotations and citations omitted).

Following a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011). We also review a district court's interpretation of state law *de novo*. *Flores v. City of Westminster*, 873 F.3d 739, 748 (9th Cir. 2017). We review a federal court's choice of remedies for an abuse of discretion. *Teutscher v. Woodson*, 835 F.3d 936, 942 (9th Cir. 2016); *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1163 (9th Cir. 2015).

**ANALYSIS**

**I.  The Challenged Evidentiary Rulings**

**A.  Exclusion of the Arbitration Award**

The district court did not abuse its discretion by denying Barranco's motion *in limine* to admit the Print3D arbitration award at trial. Barranco contends that the arbitration award is relevant because the same 3D Systems conduct underlies both the arbitrator's findings in the Print3D case and 3D Systems' alleged breach of the PSA. According to Barranco,

the parties negotiated the Print3D and Domains transactions at the same time, and the same 3D Systems employees managed the integration of both the Domains and Print3D within 3D Systems. In Barranco's view, the arbitrator's findings about 3D Systems' conduct related to the Print3D contract "certainly have *some* tendency to make it more probable than otherwise that 3D Systems did the same thing with respect to the Domains." We disagree.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. of Evid. 401. A court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. of Evid. 403. In its discretion, a court may admit an arbitration award "with regard to the facts and circumstances of each case" and accord it such weight as the court deems appropriate. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 & n.21 (1974).

Barranco relies on *Graef v. Chemical Leaman Corporation*, 106 F.3d 112 (5th Cir. 1997), to argue that the arbitration award should have been admitted. In *Graef*, an employee on disability leave sued for retaliatory discharge when his employer removed him from the seniority list allegedly in retaliation for filing a worker's compensation claim. Graef challenged his removal from the seniority list in an arbitration. *Id.* at 116. In the retaliatory discharge action, the Fifth Circuit held that the district court abused its discretion by excluding evidence of the arbitration when the arbitrator's findings made the employer's "non-retaliatory reason for the discharge more believable and, therefore, Graef's allegations of retaliation less probable." *Id.* at 117.

*Graef* is distinguishable. The arbitrator there made findings that went directly to an element of Graef's retaliatory discharge claim. More critically, in both the arbitration and the lawsuit, Graef claimed contractual and statutory rights violations arising from the *same* adverse employment action. Here, however, the Print3D arbitration "involved different claims about a different contract involving the acquisition of a different asset," and the arbitrator's findings regarding the breach of the Print3D contract would not tend to make an alleged breach of the PSA more or less probable. Thus, *Graef* does not persuade us that the district court abused its discretion by excluding the arbitration award in this case.

Barranco further argues that the court erred in alternatively finding the evidence posed a danger of undue prejudice.[3] We have previously determined that "reference to facts found in a judicial opinion can unfairly prejudice a party," because "jurors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves." *United States v. Sine*, 493 F.3d 1021, 1033–34 (9th Cir. 2007).

Although the arbitration award at issue here is not a judicial order, the district court's exclusion of the evidence was not manifestly erroneous considering the purposes for which Barranco sought to offer it. Citing specific findings from the Print3D arbitration, Barranco argues the arbitrator found that 3D Systems "engaged in bad faith" and that those

---

[3] Barranco also asserts that the court's exclusion of the evidence based on the potential for jury confusion was error, but he provides no argument in support. We thus deem the argument abandoned. *See Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992).

findings have "*some* tendency to make it more probable than otherwise that 3D Systems did the same thing with respect to the Domains." In light of a jury's tendency to defer to a professional factfinder, and Barranco's stated intent to use the arbitrator's findings to enable the jury to infer scienter from 3D Systems' breach of a different contract, it was not error for the district court to find that the danger of undue prejudice from admitting the arbitration award outweighed its probative value.[4] Accordingly, the district court did not abuse its discretion by excluding evidence of the Print3D arbitration award.

## B.  Damages Evidence

Barranco argues that the district court abused its discretion by excluding evidence of whether 3D Systems promised to invest substantial resources in the domains. The excluded evidence was Barranco's testimony about the statements that 3D Systems' CEO Abraham Reichental made during PSA negotiations while Reichental was taking notes of the deal's structure. Reichental concluded with, "[t]hat's how we get to $[5] million." That evidence, Barranco argues, concerned both an element of Barranco's breach of contract claim against 3D Systems as well as damages for that breach.

---

[4] The district court did not err by ruling on Barranco's motion *in limine* without explaining its reasoning. "As long as it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence before its admission, we conclude that the demands of Rule 403 have been met." *United States v. Verduzco*, 373 F.3d 1022, 1029 n.2 (9th Cir. 2004) (quoting *United States v. Sangrey*, 586 F.2d 1312, 1315 (1978)). The parties thoroughly briefed the issues relating to the arbitration award before the court ruled on the motion to admit the evidence. There is no indication that the court did not adequately perform the balancing required under Rule 403.

We see no error insofar as the evidence purportedly concerned an element of Barranco's breach of contract claim. At trial, Barranco sought to offer the $5 million figure only as a measure of expectation damages. Not until Barranco filed a Rule 59(a) motion for a new trial—after the district court had already excluded the evidence and after the jury trial—did he argue that Reichental's statements about the $5 million figure were also necessary to prove an element of his breach of contract claim, specifically that 3D Systems promised to invest in the Domains. The district court could not have abused its discretion when it made its exclusionary ruling by failing to consider an argument not previously raised by Barranco.

Even were we to consider the court's exclusion of the evidence as a measure of expectation damages an abuse of discretion, any such error was harmless. *See Boyd*, 576 F.3d at 949 (stating prejudice standard). Because the jury found that 3D Systems did not breach the PSA, the jury did not reach the question of damages on that claim.

## II. The District Court's Monetary Judgment

The district court exercised equitable jurisdiction to award 3D Systems restitution in the form of monetary relief. In conducting an equitable accounting, the district court concluded that Barranco did not obtain "earnings, profits, or other benefits" that arose out of his violations of the CNTC that would entitle 3D Systems to relief pursuant to the CNTC. In order to avoid an unjust outcome and "afford complete relief" under the circumstances, the court awarded restitution on a theory of unjust enrichment.

The district court gave two reasons for concluding that 3D Systems had a right to an equitable accounting. First, the court invoked an exception to the general rule that a court

may exercise equitable jurisdiction only when legal remedies are inadequate. Second, the court concluded that, "[p]ursuant to the PSA," 3D Systems had a right to an equitable accounting. Both reasons were erroneous.

"The necessary prerequisite" for a court to award equitable remedies is "the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962); *accord Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945). The district court did not address that general rule explicitly, but it correctly assumed that the rule applied to this case. But the court then erroneously relied on an exception to the rule: An equitable remedy may be appropriate, even when the "cause of action [is] cognizable at law," if the plaintiff can "show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." *Dairy Queen*, 369 U.S. at 478 (quoting *Kirby v. Lake Shore & M.S.R. Co.*, 120 U.S. 130, 134 (1887)). The Supreme Court has emphasized that, in light of a federal court's ability to appoint a special master to assist a jury "in those exceptional cases" where an equitable remedy is appropriate, "the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met." *Id.*

Here, the district court erred in finding that "the issues related to the Non-Compete Counterclaim were complex enough to merit an equitable accounting, and an equitable accounting to determine recovery, rather than a jury finding to determine damages, was appropriate." 3D Systems made no such showing—it failed to present any evidence of damages at the jury trial, much less that the accounts between the parties were complicated. Instead, the district court relied on the provisions of the PSA to conduct an accounting, from which it found "no evidence that Barranco

obtained earnings, profits, or other benefits" attributable to the violations of the Non-Compete Provision. That calculation was not so complicated that a jury would not have been able to make the determination. When the court did determine a monetary award based on a theory of unjust enrichment, it did so by performing basic calculations from evidence adduced at the bench trial. This was not one of the "rare cases" that warranted equitable relief based solely on the complexity of the relief sought. *Dairy Queen*, 369 U.S. at 478. The district court erred in finding the exception applied.

The district court also erred by relying solely on the text of the parties' contract to grant equitable relief. We hold that the terms of a contract alone cannot require a court to grant equitable relief. In doing so, we adopt the accepted rule of our sister circuits that have addressed the question. *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1263, 1266 (10th Cir. 2004) ("While courts have given weight to parties' contractual statements regarding the nature of harm and attendant remedies that will arise as a result of a breach of a contract, they nonetheless characteristically hold that such statements alone are insufficient to support a finding of irreparable harm and an award of injunctive relief."); *Smith, Bucklin & Assocs., Inc. v. Sonntag*, 83 F.3d 476, 481 (D.C. Cir. 1996) ("Although there is a contractual provision that states that the company has suffered irreparable harm if the employee breaches the covenant and that the employee agrees to be preliminarily enjoined, this by itself is an insufficient prop."); *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) (per curiam) ("[C]ontractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate."); *cf. Dairy*

*Queen*, 369 U.S. at 477–78 ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.").

We recognize that Hawaii law governs the underlying contract here and that Hawaii law makes equitable relief available in certain instances even when there is an express contract. *See, e.g.*, *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 305 P.3d 452, 465–66 (Haw. 2013) (recognizing the availability of breach of contract and unjust enrichment claims for a lease violation); *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1085 (9th Cir. 2003) (recognizing a claim for an employee's breach of the duty of loyalty to an employer under Hawaii law and affirming the remedy of disgorgement); *Porter v. Hu*, 169 P.3d 994, 1007 (Haw. App. Ct. 2007) (granting relief on a theory of unjust enrichment where an express contract "did not provide for redress of the specific harm done"). Those cases are inapposite here, however, because 3D Systems did not elect to bring claims for unjust enrichment or breach of the duty of loyalty, and because the PSA contained a cumulative rights clause that contemplated an award of damages.

The district court thus erred in awarding 3D Systems an equitable remedy on its legal claim for damages resulting from Barranco's breach of the CNTC. We reverse the monetary award for 3D Systems and vacate the corresponding judgment against Barranco.

## CONCLUSION

The district court's evidentiary rulings are **AFFIRMED**. The monetary judgment in favor of 3D Systems on its breach of contract counterclaim is **REVERSED** and **VACATED**. The parties shall bear their own costs on appeal.