NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 5 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ESTATE OF WILLIAM HAN
MANSTROM-GREENING, through Carol J.
Manstrom, Personal Representative,

Plaintiff-Appellant,

v.

LANE COUNTY; et al.,

Defendants-Appellees.

No. 22-35340

D.C. No. 6:18-cv-00530-MC

MEMORANDUM*

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted August 21, 2023
Portland, Oregon

Before: BENNETT, VANDYKE, and H.A. THOMAS, Circuit Judges.

The Estate of William Han Manstrom-Greening, through personal

representative Carol Manstrom, appeals certain evidentiary rulings made by the

district court during trial of the Estate's negligence claims against Defendants

Glenn Greening, Lane County, Oregon, and Donovan Dumire in his official

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

capacity as the "Manager and chief policy maker for the Lane County Parole and Probation Division." Collectively, we refer to Greening, the County, and Dumire as "Defendants."[1] The jury returned a defense verdict. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[2]

"We review evidentiary rulings for abuse of discretion and reverse only if a ruling is erroneous *and* prejudicial." *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1127 (9th Cir. 2020) (internal quotation marks and citation omitted). "When error is established, we must presume prejudice unless it is more probable than not that the error did not materially affect the verdict." *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 949 (9th Cir. 2009) (internal quotation marks and citations omitted).

The question of whether evidence is admissible in this case is governed by federal law. *See Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010). Under the federal rules, evidence is admissible only if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of

---

[1] We previously affirmed summary judgment in favor of Defendants on other claims raised in the Estate's original complaint. *Est. of Manstrom-Greening through Manstrom v. Lane County*, 845 F. App'x 555 (9th Cir. 2021) (unpublished).

[2] The pending motion of Everytown for Gun Safety to appear as amicus, Dkt. 36, is **GRANTED.**

2

consequence in determining the action." Fed. R. Evid. 401. Although we have described this relevance test as a low bar, the district court has considerable discretion to determine what evidence is material to the issues in a particular case. *See Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196–97 (9th Cir. 2014).

1. The district court did not abuse its discretion in excluding as irrelevant portions of the proposed testimony of Dr. Glenn Lipson, the Estate's expert psychologist.[3] Expert testimony is admissible only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). An expert's proposed testimony "must be beyond the common knowledge of the average layman." *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002) (citing *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997) (en banc)).

The Estate first challenges the exclusion of Dr. Lipson's proposed testimony as to statistical information including national suicide rates, the prevalence of firearms in suicide deaths, and the effect of age, sex, and adverse childhood experiences on suicide rates. The district court determined that these statistics had no bearing on the elements of negligence under Oregon law. It found that information about national or regional suicide rates and risk factors does not make

---

[3] Because the parties are familiar with the facts, we recount them here only as necessary to resolve the appeal.

it more or less likely that Defendants' actions were unreasonable or foreseeably caused William's death. *See Scott v. Kesselring*, 513 P.3d 581, 590 (Or. 2022) (discussing reasonableness, foreseeability, and causation as elements of negligence under Oregon law).[4] The district court did not abuse its discretion in so finding.

Second, the Estate challenges the district court's exclusion of Dr. Lipson's proposed testimony about the psychological role of firearms and impulsivity in suicide deaths.[5] The district court was within its discretion to conclude that this testimony fell within the common understanding of the average juror. As the court stated, "[h]aving an expert opine on . . . the risk factors, causes, and prevention of suicide does not aid the jury in their factfinding mission in this case." As to impulsivity and safety devices, the district court explained "everybody knows that things that take more time take more thought." The most favorable inference that

---

[4] Although the Estate points to some cases in which Oregon courts found statistical information relevant to negligence claims, the statistics in those cases were tied directly to the specific harm alleged. *See, e.g.*, *Piazza v. Kellim*, 377 P.3d 492, 507 (Or. 2016) (en banc) (history of violence in a particular nine-block neighborhood relevant to risk of future attacks in that neighborhood); *Chapman v. Mayfield*, 361 P.3d 566, 580 (Or. 2015) (en banc) ("[R]ate of incidence of violence among intoxicated drinkers" might be relevant to claim against bar that continued serving a visibly intoxicated patron).

[5] Specifically, Dr. Lipson would have testified that pursuant to a psychological phenomenon known as the "weapons effect," the mere presence of a firearm can increase the risk of violent and suicidal impulses. Dr. Lipson would also have testified that the presence of a safety device such as a safe or trigger lock can materially reduce the risk of suicide.

the jury could have drawn from this portion of Dr. Lipson's proposed testimony was that William's death was caused by an impulsive decision made possible by Greening's method of storing his firearm. But the Estate does not explain why this inference required the testimony of a trained psychologist. *Cf. Lopez v. Allen*, 47 F.4th 1040, 1050 (9th Cir. 2022) (explaining that the fact that "drug and alcohol use can impair decision making or lead to violent acts" is within the common knowledge of an average juror).[6]

But even had the district court abused its discretion in excluding the disputed portions of Dr. Lipson's testimony, any such error was harmless. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1005 (9th Cir. 2008) (finding a potential evidentiary error harmless where other admitted evidence established the same element of a claim). Here, any error in excluding statistical evidence about suicide rates and causes was mitigated by introduction of evidence about William's mental health history, upbringing, and recent breakup. Any error in excluding testimony about safety devices or the role of impulsivity in William's

---

[6] We have acknowledged that it is important "not to overstate the scope of the average juror's common understanding and knowledge." *Finley*, 301 F.3d at 1013. But this case is distinct from those in which we have reversed exclusion of expert testimony. For example, in *Finley*, an expert psychologist's testimony about a defendant's alleged personality disorder could have helped the jury contextualize the defendant's behavior. *Id.* Here, by contrast, Dr. Lipson only proposed to testify that impulsivity *can* contribute to firearm-related suicide deaths.

death was cured by the Estate's repeated references to the importance of safe firearm storage and arguments that William's death resulted from an impulsive choice.[7] These statements allowed the jury to draw any inferences favorable to the Estate that could have been garnered from Dr. Lipson's excluded testimony. Moreover, powerful and uncontested evidence discounted the role that impulsivity played in William's tragic death. The evidence established that William was contemplating suicide for more than a day and left multiple notes to family and friends stating that there was nothing they could have done to prevent his death. Thus, even assuming that the exclusion was error, the Estate was not prejudiced because it is more probable than not that the error did not materially affect the verdict. *See Boyd*, 576 F.3d at 949.

2.      The district court did not abuse its discretion in sustaining objections to several questions the Estate posed to former Eugene Police Officer Richard Bremer. The court barred the Estate from asking Officer Bremer about: (1) the "number of suicides of young people" he had investigated; (2) the number of

---

[7] For example, the Estate's counsel referenced the user's manual for Greening's firearm, which emphasizes the importance of safe storage. Counsel also noted that the County lacked a policy for safe storage practices for employees who stored their service weapons at home.

As to impulsivity, counsel repeatedly argued that William's death was the result of an impulsive choice and specifically asked the jury "to find that the presence and availability of the loaded [firearm] was an important factor in causing [William's] death."

6

"suicides by firearm" he had investigated; (3) suicide rates in Lane County around the time of William's death; and (4) whether he had received any training "as to whether or not there's any correlation between access to a firearm and suicide."

The district court properly excluded the first three questions as irrelevant, as the prevalence of other suicides is not relevant to the question of whether Defendants were negligent. And the Estate does not explain how Officer Bremer's training was relevant to whether the Defendants should have reasonably foreseen William's death. *See Panpat v. Owens-Brockway Glass Container, Inc.*, 71 P.3d 553, 556–57 (Or. Ct. App. 2003) (foreseeability is assessed from the standpoint of the actual defendants). And even were there any error in excluding this testimony, any such error was harmless as the statistical questions would have been cumulative of other evidence about William's mental health, and the question about firearm access was cumulative of other testimony and arguments about impulsivity and safety devices.

3. The district court did not abuse its discretion by declining to take judicial notice of statistical information that the Estate sought to introduce. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (reviewing judicial notice determination for abuse of discretion). The Estate sought to introduce statistics about suicide rates among young people in Oregon, firearm related suicides in Oregon, certain risk factors of suicide, and the extent to which

7

safety devices can mitigate the risk of suicide.

Although the district court generally "must take judicial notice [of an adjudicative fact] if a party requests it and the court is supplied with the necessary information," Fed. R. Evid. 201(c)(2), evidence is only judicially noticeable if it is otherwise admissible. *See La Mirada Trucking, Inc. v. Teamsters Loc. Union 166*, 538 F.2d 286, 289 (9th Cir. 1976) (district court did not err in declining to take judicial notice of fact that "had no relevance" to the dispute). Here, the district court did not abuse its discretion by declining to judicially notice the Estate's proffered statistics because, as above, regional suicide rates and risk factors are not relevant to whether Defendants acted negligently under the circumstances of this case. And even if the district court did err, any such error was harmless because the statistics were cumulative of other evidence about William's mental health and the role of safety devices.

4.      The district court did not abuse its discretion in limiting the scope of argument about the jury's role in serving as the conscience of the community or in setting a community standard for the safe storage of firearms. *See United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989) (reviewing limitations on the scope of argument for abuse of discretion); *see also Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021) ("We review for abuse of discretion the district court's ruling on motions *in limine*."). The Estate points to criminal cases

in which we have explained that "the general rule is that appeals for the jury to act as a conscience of the community are not impermissible, unless specifically designed to inflame the jury." *United States v. Lester*, 749 F.2d 1288, 1301 (9th Cir. 1984).

Even were this principle applicable here, we have explained that the district court is well within its discretion to confine statements to the jury to the facts of a particular case. *See, e.g., United States v. Koon*, 34 F.3d 1416, 1444 (9th Cir. 1994) (suggesting that appeal to community conscience would be inappropriate if "accompanied by any suggestion of the consequences of a particular verdict"), *rev'd in part on other grounds by Koon v. United States*, 518 U.S. 81 (1996); *Guam v. Quichocho*, 973 F.2d 723, 727 (9th Cir. 1992) (finding "troubling," although harmless, an argument that acquittal of a defendant charged with murder would deny justice for other, unrelated victims). Here, the district court explained that it would limit argument to the facts of this case and explained why. It cautioned Plaintiffs only to avoid discussing the consequences of potential verdicts on setting a norm of firearm safety or saving the lives of others. The district court did not limit the Estate from emphasizing the jury's role in assessing the reasonableness of Defendants' conduct from their perspective as reasonable members of the community.

And again, any error was harmless. Both the Estate's counsel and the jury

9

instructions emphasized that the jury was to evaluate the negligence of Defendants' conduct from their perspective as members of the community. *See Fazzolari v. Portland Sch. Dist. No. 1J*, 734 P.2d 1326, 1333 (Or. 1987) (en banc) (elements of negligence are assessed from the standpoint of a reasonable community member under Oregon law). And during her testimony, Manstrom expressed her "hope that because of this case, some law enforcement officer's family member will live to see another day."

**AFFIRMED.**